JOSEPH A. PETELA *v*. ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION
ACT, ET AL.

SUPERIOR COURT NEW HAVEN COUNTY FILE No. 135350

JOSEPH A. PETELA *v*. ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION
ACT, ET AL.

SUPERIOR COURT NEW HAVEN COUNTY FILE No. 135451

Memorandum filed March 6, 1974

*Joseph A. Petela,* pro se, the plaintiff in both cases.

*Steven R. Rolnick,* for the plaintiff in both cases.

*Frank J. Dumark,* for the defendant board of education of Branford in the first case.

*Robert K. Killian,* attorney general, and *Leonard M. Caine,* assistant attorney general, for the defendant administrator in both cases.

MULVEY, J. The finding of facts by the commissioner reveals the following: The plaintiff was forty-two years of age and was a teacher. He had been employed by the board of education of the town of Branford from September, 1971, to June, 1972. He was paid $14,200 per year as a special education teacher. During the middle of the school year 1971-72, he was transferred from a position in an open classroom with mentally retarded and

physically handicapped children to a position in a junior high school. While at that junior high school he was physically assaulted. He filed a complaint but the bargaining unit for the teachers did not press the grievance. A week and a half prior to the end of the year, he was given the opportunity to cease working for the year. In a letter dated June 22, 1972, but received by the board of education on June 19, 1972, the plaintiff submitted his resignation from his position as a teacher in the Branford school system. The commissioner's finding states that in his letter the plaintiff indicated that he was resigning because he felt that he had lost his image and identification as a teacher, because he felt that he did not know what his role in education was in view of the philosophy of education that the child is the most important subject, because he felt that very little learning could take place unless discipline were maintained, and because he had lost all heart for teaching.

At the hearing before the commissioner, the plaintiff went into great detail concerning his problem, particularly concerning the assault which had required medical attention. The plaintiff felt that his experience in the Branford school system had had an adverse effect on his health.

The commissioner concluded in his finding (1) that the plaintiff resigned for sufficient cause connected with his employment and; (2) that the resignation in this case constituted a discharge or involuntary retirement.

The commissioner decided that § 31-222 (a) (5) (D) (3) (B) of the General Statutes applied "in that certified teachers do not qualify for unemployment compensation benefits except on *termination of employment.*" (Emphasis added.) The commissioner then went on to hold: "In view

of the finding that the . . . [plaintiff's] employment was *involuntarily terminated* in this case, he qualified for benefits within the meaning of the law." (Emphasis added.)

The commissioner reversed the decision of the administrator, who has appealed claiming that the conclusions reached by the commissioner are not legally consistent with the subordinate facts found by him. This court agrees.

It is elementary that remedial legislation such as the Unemployment Compensation Act should receive a reasonably liberal interpretation, free from technicalities not required by the specific language of the statute. *Anthony* v. *Administrator*, 158 Conn. 556, 561. Also, this court is well aware that it has only limited jurisdiction to review the commissioner's finding. General Statutes § 31-249;[1] Practice Book §§ 435, 437. That is particularly true where, as in this matter, no motion to correct the finding was made. See Practice Book § 438; *Samson* v. *Administrator*, 29 Conn. Sup. 316, 317.

This court is then left to determine whether the commissioner acted unreasonably, arbitrarily or illegally. It may not substitute its own conclusions for those of the commissioner. *Bartlett* v. *Administrator*, 142 Conn. 497, 505; *Stapleton* v. *Administrator*, 142 Conn. 160, 165; *Samson* v. *Administrator*, supra, 318.

Section 31-222 (a) (5) (D) (3) (B) reads, as pertinent to this case, as follows: "No provision of this chapter . . . shall apply to . . . certificated teachers, academic supervisory personnel, superintendents and assistant superintendents under contract with or employed by a board of education,

---

[1] Effective July 1, 1974, § 31-249 was repealed and Public Acts 1974, No. 74-339, § 22, was substituted in lieu thereof.

public school system, or by or in a school other than an institution of higher education, *except on severance of employment.*" (Emphasis added.) Thus, by its terms, § 31-222 (a) (5) (D) (3) (B) excludes from eligibility for unemployment compensation benefits certified teachers under contract with, or employed by, a board of education except on *severance* of that employment. (Emphasis added.)

Our Supreme Court, to the knowledge of this court, has not defined "severance of employment." But that court has, on a number of occasions, defined "severance pay." These definitions are helpful. In *Willets* v. *Emhart Mfg. Co.,* 152 Conn. 487, 490-91, the court said: "Separation pay is not analogous to, nor is it a form of, unemployment compensation. Rather, it is a kind of accumulated compensation for past services and a material recognition of their past value. . . . It concerns the past, not the future, and once it is earned, it becomes payable no matter what may thereafter happen."

In *McGowan* v. *Administrator,* 153 Conn. 691, 693, the court said this: "Since, in the connotation of the statute, wages cease when employment does, severance pay cannot be considered wages. . . . Severance pay is 'a form of compensation for the termination of the employment relation, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also recompense him for certain losses attributable to the dismissal.'" See also *Mace* v. *Conde Nast Publications, Inc.,* 155 Conn. 680, 683.

In *Brannigan* v. *Administrator,* 139 Conn. 572, the plaintiff had retired and made application for severance pay available to him under an agreement. The court (p. 575) said: "It suffices to say that

notice or dismissal payments are usually associated with a termination of the employment relationship for reasons primarily beyond the control of the employee."

The thread that seems to run through all of those decisions is that when an employee is "severed" from his employment, the severance appears to be for reasons not of his own doing. It may result from, among other things, a layoff, a closing of the business, or a retirement plan set up by the employer. In other words, the term "severance of employment" appears to be more restrictive than the term "termination of employment." It is restricted to action initiated by the employer. In discussing those employees not eligible for severance pay it has been said: "Also ineligible for payments should be those who resign or quit their jobs and those who are discharged for self induced dismissal." 1 Werne, Administration of Labor Contracts § 13.08.

The phrase "termination of employment" was discussed in *Sullivan* v. *Morgan*, 160 Conn. 176, 181. The court said: "At the start we are confronted with a problem of semantics since, in common parlance, the termination of the plaintiff's employment might be termed a dismissal, a discharge, a layoff, or a separation or dropping from state service." "Terminate" means to come to a limit in time, to end. It implies that that which is brought to an end had previously existed. *Merchants Bank & Trust Co.* v. *New Canaan Historical Society,* 133 Conn. 706, 714. "Terminate" is a word that has the connotation, unless restricted by contract or otherwise, of giving the power to either party to bring to an end that which formerly existed. Webster, Third New International Dictionary.

This court notes that § 31-222 was amended by the 1971 session of the legislature to add subsection

(a) (5) (D) (3) (B). That addition reads the same today except for the last five words. In 1971 the legislature used the words "except on *termination* of employment." (Emphasis added.) The 1972 session of the legislature changed that language to read "except on *severance* of employment." (Emphasis added.) The change became effective May 24, 1972, prior to the incidents which gave rise to the present matter.

The court may take judicial notice of the discussion on the floor of the General Assembly. *Harris* v. *Planning Commission,* 151 Conn. 95, 100. Also, this court may assume that a change made by the General Assembly in the law was made to accomplish some purpose. *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 152; *Brown* v. *Cato,* 147 Conn. 418, 421. In the discussion on the floor of the house of representatives prior to the vote on the amendment, it was said: "I would also, Mr. Speaker, [like] to point out in response to some of the objections that this truly does at least in the minds of most of the members of the House to whom I have spoken, accomplish the fiscal correction to which the amendment addresses itself and it truly I think reflects the employment agreement between the community and the people that are herein involved, so that the distortion which existed under the previous provisions . . . [is] certainly wiped out and makes this amendment desirable." 15 H.R. Proc., 1972 Sess., pt. 7, p. 2742.

In seeking the intent of legislation its object must be taken into account. *Norwalk* v. *Daniele,* 143 Conn. 85, 87. It is clear that the 1972 amendment was enacted to "accomplish fiscal correction" and "so that the distortion which existed under previous provisions . . . [is] certainly wiped out." 15 H.R. Proc., op. cit.

The commissioner based his decision on a law which no longer existed. In so doing he acted illegally. On the facts found by the commissioner there is no merit to the plaintiff's claim under the law.

The appeals are sustained and judgment reversing the decision of the commissioner may enter in each case.