F.A.S. INTERNATIONAL, INC. *v.* PETER A. REILLY, ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued November 8, 1979—decision released January 29, 1980

*Michael J. Lombardo,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Stuart Bear,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff F.A.S. International, Inc., hereinafter F.A.S., is a New York corporation authorized to do business in Connecticut. During the period relevant to this case it had three correspondence school divisions, Famous Artists School, Famous Writers School and Famous Photographers School, each of which used practicing professional artists, writers and photographers, respectively, to analyze and critique students' correspondence lessons.

The finding of the court is not subject to attack with one exception and that correction is made by an addition from the draft finding. Some findings of fact are actually conclusions and are treated as such.

Prior to July 10, 1972, F.A.S. employed artists, writers and photographers full time to analyze and correct the correspondence lessons of its students under the following conditions: The employees worked regularly scheduled hours from 8:30 a.m. to 4:30 p.m. Monday through Friday each week. They worked on the premises of F.A.S., where they were provided office space and equipment, including typewriters and supplies for art, writing and photography. The minimum daily output of lesson

analysis which they were required to produce was determined by F.A.S. Their work area and work product were directly supervised by F.A.S. They were paid a weekly salary and were given paid holidays, annual vacations, overtime pay in excess of a thirty-five hour week and paid sick leave. They received fringe benefits, including life and medical insurance, and pension and profit sharing benefits. Social security taxes and federal income taxes were withheld from their salaries.

On or before July 10, 1972, F.A.S. terminated all of its full-time artists, writers and photographers and informed them of their statutory right to receive unemployment compensation benefits. All those whose services were required after July 10, 1972, were utilized only on an as needed, individual lesson analysis basis. There were no regularly scheduled hours of employment. No office space, equipment or supplies were provided by F.A.S., with the sole exception of stationery. All work was taken by the artists, writers and photographers to their homes, offices or studios and returned to F.A.S. when completed. They had no minimum daily output and were given only one or two assignments at a time. At no time did F.A.S. make any promises or commitments concerning the number of lessons to be submitted for their analysis. They were compensated only on the basis of the number of lesson analyses completed. They received no paid holidays or vacations, no overtime pay, and no sick leave or fringe benefits. No social security or federal income taxes were withheld from F.A.S.'s payments to them. For tax purposes, they received only informational statements (Form 1099) showing income received from F.A.S. The amount paid for each lesson analysis completed after July 10,

1972, was established by F.A.S. This amount was based upon their previous rate of pay, including the value of fringe benefits.

Those who were professional employees of F.A.S. before July 10, 1972, and who continued to perform services for F.A.S. thereafter considered themselves independent contractors as of that date. They did free-lance work as artists, writers and photographers for others as well as for F.A.S. when work was available. Not all those employed by F.A.S. prior to July 10, 1972, were utilized by the corporation after this date, and some artists, writers and photographers not previously employed by F.A.S. have been utilized by it on a free-lance basis since then. Some professional employees of F.A.S. prior to July 10, 1972, refused free-lance work with F.A.S. after that date.

Several professional employees of F.A.S. prior to July 10, 1972 filed for unemployment benefits as late as July, 1974, because they believed that they were entitled to unemployment compensation benefits based on their prior employment and that they had earned credits which could be used when needed. These applications evidently triggered the administrator's investigation of F.A.S. and its assessment of the plaintiff as an employer for the fourth quarter of 1972 and calendar year 1973.

The plaintiff appealed to the Superior Court pursuant to General Statutes § 31-270. The trial court found that the artists, writers and photographers were not employees, as defined in General Statutes § 31-222 (a) (1) (B) (ii), after July 10, 1972. The defendant administrator has appealed.

The Unemployment Compensation Act[1] defines employment in General Statutes § 31-222 (a) (1). In addition to codifying the common-law rules applicable to determine the existence of an employer-employee relationship, the act was amended in 1971 to include the so-called "ABC test," now set forth in subsections I, II and III of § 31-222 (a) (1) (B) (ii).[2] Therefore, under Connecticut law, service may be employment and one may be an employee even if the common-law relationship of master and servant does not exist, provided the threefold criteria of the ABC test are satisfied.

There is no question that the artists, writers and photographers were not employees in the traditional sense. The administrator does not seriously advance this contention, but instead focuses on the claim that F.A.S. failed to satisfy the ABC test.

Under the ABC test, service is employment unless and until it is shown to the administrator that the following factors exist: (A) the individual per-

---

[1] General Statutes §§ 31-222—31-274h.

[2] Public Acts 1971, No. 835, § (B) (ii) amended General Statutes § 31-222 (a) (1). This amendment, which became effective July 1, 1971, provides in part: ". . . Service performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

forming the services has been and will continue to be free from any control or direction over the performance of his services both under his contract and in fact; and (B) the service is either outside the usual course of business for which it is performed or the service is performed outside of all the places of business of the enterprise for which it is performed; and (C) the individual performing the service is customarily engaged in an independently established trade, occupation, profession or business of the same nature. The administrator concedes that F.A.S. has satisfied the second prong of the test. Therefore, part "B" is not in issue.

Under part A of the test, F.A.S. bore the burden of proving that the artists, writers and photographers have "been and will continue to be free from control and direction . . . both under [their] contracts and in fact." Part A of the test invokes essentially the same criteria as the independent contractor test at common law. "The fundamental distinction between an employee and an independent contractor depends upon the existence or non-existence of the right to control the means and methods of work." *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 179, 15 A.2d 17 (1940); *Northwestern Mutual Life Ins. Co.* v. *Tone,* 125 Conn. 183, 191, 4 A.2d 640 (1939). Some jurisdictions require very little supervision over the details of performance in order to find control and, therefore, the presence of the employment relationship.[3] The statutory requirement of control in this state, however, is that which the common law exacts.

---

[3] See Willcox, "The Coverage of Unemployment Compensation Laws," 8 Vanderbilt L. Rev. 245, 263 nn. 62, 63 (1955), and cases cited therein.

In *Alexander* v. *R. A. Sherman's Sons Co.,* 86 Conn. 292, 297, 85 A. 514 (1912), this court adopted the definition that "[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." This rule has been amplified in subsequent cases but the basic principle has not been altered. *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 195, 292 A.2d 912 (1972); *Francis* v. *Franklin Cafeteria, Inc.,* 123 Conn. 320, 323–24, 195 A. 198 (1937).

Whether one is an employee or an independent contractor is therefore a question of fact. *Electrolux Corporation* v. *Danaher,* 128 Conn. 342, 348, 23 A.2d 135 (1941); *Manning* v. *Woodland Tobacco Co.,* 113 Conn. 282, 287, 155 A. 61 (1931). The professionals utilized by F.A.S. employed different techniques or approaches in their criticism and analysis of student work. The plaintiff's only concern was with the result or end product of their efforts. F.A.S. exercised no control over the means and method of their performance. Although it is true, as claimed by the administrator, that F.A.S. would not permit its professionals to hire others to evaluate student work which had been given to them for review, this prohibition is not significant because contracts for personal services cannot be assigned without consent. *Rossetti* v. *New Britain,* 163 Conn. 283, 291, 303 A.2d 714 (1972). It is obvious that F.A.S. depended upon the skill and reputation of the artists, writers and photographers it selected to produce a product of quality. The corporation did not rely on rote correction of objective examinations. In view of these findings of fact the court was not in error in concluding that the pro-

fessional artists, writers and photographers were not employees of the plaintiff under part A or subsection I of the test contained in the statute.

Part C, or subsection III, of the ABC test requires that the individual be "customarily engaged in an independently established . . . profession . . . of the same nature as that involved in the service performed." The thrust of the administrator's argument on part C of the case is that although the artists, writers and photographers continued to work on a free-lance basis, when they were engaged by F.A.S. they functioned as instructors hired to grade and critique student work. The administrator contends that they do not paint, sculpt, write or photograph, as they would do in independently established professions as required by part C of the test, for F.A.S.

The trial court found that each of the three schools was started by professionals with practical experience in art, writing and photography, and not by certified teachers or instructors. The first president and the driving force behind the Famous Artists School was a successful commercial artist whose formal education ended with the eighth grade. F.A.S. used practicing artists, writers and photographers for its lesson evaluation assignments. It did not use certified or practicing teachers. No F.A.S. professional employees were certified by the state as teachers or instructors. The reason why F.A.S. used only professionals to review student work was that it sought their practical work experience, not their teaching experience. F.A.S. sought to make this practical work experience available to its students. Therefore, in performing their lesson analyses, F.A.S.'s professional employees

were practicing elements of their chosen professions as artists, writers and photographers.

The remaining issue posed by part C of the test is whether the artists, writers and photographers were "customarily engaged in an independently established profession." This requires one or more enterprises created by them which exist separate and apart from their relationships with F.A.S. and which will survive the termination of that relationship.[4] The performance of like services by the artists, writers and photographers must be independent of whatever connection they have with F.A.S. and their continued performance of such like services must not be subject to their relationship with the principal.[5] The facts found by the court and recited above amply support its conclusion that F.A.S. satisfied part "C" or subsection III of the test.[6]

Some states have interpreted the ABC test restrictively, rendering it no more than a statutory expression of the common-law relationship of employer and employee.[7] Connecticut's Unemploy-

---

[4] See Willcox, "The Coverage of Unemployment Compensation Laws," 8 Vanderbilt L. Rev. 245, 265 (1955).

[5] See Asia, "Employment Relation: Common-Law Concept and Legislative Definition," 55 Yale L.J. 76, 92 (1945).

[6] The administrator cites *Rozran* v. *Durkin*, 381 Ill. 97, 105, 45 N.E.2d 180 (1942) in support of his contention that F.A.S.' unilateral determination of fees for services rendered by the professionals shows that they were not engaged in independently established professions. In *Rozran*, however, the person who was engaged to deliver packages for the plaintiff performed no services for others, nor did he have time to do so. Unlike the professionals who were retained by F.A.S., his sole employment consisted of the performances of services for the plaintiff.

[7] See Zankel, "Unemployment Insurance: The Definition of Employee," 42 St. John's L. Rev. 508, 511 (1968); Willcox, "The Coverage of Unemployment Compensation Laws," 8 Vanderbilt L. Rev. 245, 255–58 (1955).

ment Compensation Act has been characterized by this court as remedial in character, to be construed liberally as regards beneficiaries in order to accomplish its purpose. *Robert C. Buell & Co.* v. *Danaher,* 127 Conn. 606, 612, 18 A.2d 697 (1941). In *Halabi* v. *Administrator,* 171 Conn. 316, 322, 370 A.2d 938 (1976), however, decided after the ABC test was included in the statute, the court stated that although the Unemployment Compensation Act should be construed liberally in favor of beneficiaries in order to effectuate its purpose, it should not be construed unrealistically in order to distort its purpose. See also *Furber* v. *Administrator,* 164 Conn. 446, 454, 324 A.2d 254 (1973).

The court was not in error in concluding that the artists, writers and photographers were not employees of the plaintiff under the Unemployment Compensation Act and in sustaining the plaintiff's appeal from the assessment made by the defendant.

There is no error.

In this opinion the other judges concurred.