[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a civil action brought by the Connecticut Labor Commissioner to enforce the wage laws of the State of Connecticut pursuant to Conn. Gen. Stat. 31-72[1] alleging that the defendant failed to pay wages as required by Conn. Gen. Stat. 31-71(a).[2] While the Commissioner of Labor is asserting wage claims on behalf of Marilyn Gluck and Marilyn Lyren it is the Commissioner and not they who is the plaintiff.
The plaintiff claims that Mesdames Gluck and Lyren are employees within the intendment of the cited section of the statute. With respect to Mrs. Gluck the claim is made that she was a real estate saleswoman for the William Raveis CT Page 11306 company in its New Haven office, that William Raveis, President of the defendant company, offered to pay the entire commission received by the company to whichever of his sales people first located a suitable office in New Haven; that she did in fact find such office which is now used for that purpose by the William Raveis company but that the defendant failed to pay her the full amount of the commission which it received.
The plaintiff claims that Marilyn Lyren was a manager in the defendant's Greenwich and Trumbull offices and had an agreement with the defendant that she would receive a certain percentage of the company's commission on every transaction bindered in her office while she was the manager. When she left the company there were still substantial sums of money due her on these overrides which the company has refused to pay her.
The defendant claims primarily that both women were independent contractors and were not wage earners and that their compensation did not fit within the definition of wages found in 31-71(a)(3). As to Marilyn Gluck the defendant also claims that she was not the first to locate the present offices of company but that it was found by others although in fact it paid her a portion of the commission which it received. The company divided up the commission which it received into legal expenses and three of its sales people, Marilyn Gluck and two others.
As to Marilyn Lyren the defendant claims that it had no agreement to pay her the overrides which it received after she left the company and even if that were so, no evidence was introduced to show that in fact, although these real estate transactions were placed on its books, it ever was paid for them.
It is the opinion of this court that the plaintiff has established by much more than a preponderance of the evidence that the relationship of the two claimants to William Raveis, Inc. is within the intendment of 31-71(a) of the Conn. Gen. Stat. Although there are no Connecticut cases directly in point involving the Labor Commissioner there is ample law regarding unemployment compensation upon which an analysis of this case and whether or not these women were independent contractors can be based. CT Page 11307
In F.A.S. International, Inc. v. Reilly, 179 Conn. 507,512 the Connecticut Supreme Court applied what is known as the ABC Test outlining the criteria for distinguishing the difference between an employee and an independent contractor. In this case the court quoting Beaverdale Memorial Park, Inc. v. Danaher, 127 Conn. 175, 179. states "the fundamental distinction between an employee and an independent contractor depends upon the existence or non-existence of the right to control the means and methods of work." The court states further "whether one is an employee or an independent contractor is therefore a question of fact." p. 513.
Each of the claimants although they worked in different offices and at different jobs were subject to substantial control by William Raveis, Inc. Each operated under the Raveis name not under her own name, each had to view various training tapes and a required book; each worked on a commission which was paid to them by William Raveis, Inc., after it received a commission from the buyer of any property that these people handled for the Raveis Company. Their commission was set by defendant. Each had to attend training programs. Mrs. Gluck had to put in a certain amount of floor time, i.e., time when she was in charge of the office. Ms. Lyren was required to put in 40- hours per week plus an appearance on weekends. Their work place was provided for them by the Raveis Company. They were provided with a desk, office supplies, business cards and letterheads on which there appeared the William Raveis, Inc. name. As to each her license was held by the Company. Neither could sell for any other company under the rules of William Raveis, Inc., and applicable statutes. Each was subject to the rules set down in the Raveis Training Manual (Exhibit K). Each was expected to fulfill certain goals which were set for them by the employer. The manager was expected to motivate the employees. A detailed examination of the training manual furnished by William Raveis to the employees can lead only to one conclusion and that is that these people both the salesperson, Mrs. Gluck, and the manager, Ms. Lyren, were employees of the William Raveis, Inc. and not independent contractors and their compensation amounted to a wage within the intendment of the statute. Applying the ABC Test referred to F.A.S. International, supra, leads to the same result. The manager was probably even more subject to the control than the salesperson but in either case each was sufficiently within CT Page 11308 the control of the employer to warrant the labor commissioner bringing this action under the provisions of 31-72.
It is the opinion of this court that judgment should be rendered in favor of Marilyn Gluck's claim to the commission promised by William Raveis, Inc. for locating suitable office space in New Haven. The court finds that William Raveis at a certain meeting held in Woodbury told the employees that he would pay them a full selling brokers commission received by the company, that this was to be paid to the person who first located an office which he found to be satisfactory as a New Haven branch office. The court finds that Marilyn Gluck did first locate such a space and did through her manager, Carol Pepe, notify William Raveis, the president of the company, of the existence of this office; that he did examine same and that he approved it and it became the office.
The plaintiff produced testimony through Mrs. Gluck and Carole Ann Pepe, Manager of the New Haven office, that Mrs. Gluck notified Mrs. Pepe who in time notified William Raveis of the potential new location which was later chosen by Raveis; that this was on August 2, 1987 and that she was the first to do so.
The defendant produced evidence by Mr. Devine who claimed to have notified Raveis first through his Manager, Joan Miller, but no evidence was adduced as to the exact date, only vague references to arranging "a showing for Bill that Saturday; next day; talking to Mrs. Gluck at the elevator." No evidence was sought from Mr. Raveis; Miss Miller or Mr. Kahn who reviewed the property with Mr. Devine and no explanation as to why these three who might have confirmed Mr. Devine's testimony were not available. In addition, it should be noted that in dividing up the commission received of $12,000, Mr. Cooke gave Mrs. Gluck the lion's share — In the court's view recognizing her finder's claim but rewarding the other two for their assistance in negotiating the deal.
The court further finds that William Raveis promised 100% of the selling commission received by the company, although the selling commission should have been $24,000, there were some legal complications which necessitated a compromise with another broker and resulted in the actual payment of $12,000 to William Raveis, Inc. CT Page 11309
In the opinion of this court the agreement was for the payment of the full seller's commission received by William Raveis, Inc. and that full seller's commission was $12,000. Whether or not the company had to pay certain legal expenses which reduced its net is of no consequence. Whether or not it was customary to pay legal expenses before splitting is of no consequence. What controls in this case is the actual offer to the employees and it is clear from evidence rendered by witnesses for both sides that the contract was the payment of the full commission received by William Raveis from the lessor not the net commission after expenses and not the original potential commission. Therefore, judgment may be rendered for the claimant Marilyn Gluck in the amount of $12,000.
Marilyn Lyren served as sales manager at the Greenwich and Trumbull offices of William Raveis, Inc., from July 1, 1986 through May 26, 1988. She seeks $12,068.29 in commissions for sales contracted while she was employed by the defendant. The claimant came to work for defendant under an implied contract of employment predicated upon a letter of intent (Exhibit F) and negotiations with Mary Ann Evick, regional vice president of William Raveis, Inc. She seeks $12,068.29 in commissions for sales contracted while she was employed by the defendant.
She came to work for defendant on the basis of a salary of $2,000.00 per month and 5% of company dollar[3] on all properties bindered[4] from the day she started work. The usual remuneration for a manager was 8% override[5] but she had sought the $2,000.00 dollar 5% deal in order to give her some income while she got her family settled. At the end of the first year in accordance with her agreement she received 8% of the company dollar and no base salary. The amount which she claims is due her is calculated on the basis of the actual binders which were on the books when she left the company. Plaintiff provided Exhibit H. which consisted of photo copies of the binder entry forms on the books of the corporation at the time that she left.
It is the opinion of this court that she had an implied contract with the company to receive a percent of the company commission on all binders which were on the books of the company at the time that she ceased her employment and for which she had not been paid at that point. When she took over as manager it became part of her duty to see that the manager CT Page 11310 whom she succeeded received his override on all binders on the books of the company when he ceased to occupy that position. It is the opinion of this court that her commission was earned when each binder was placed on the books of the company although payable at some future date. Although she seeks commissions which were not paid until after she left the company she is not seeking anything that was earned by anybody else. These commissions were earned by her during her tenure as manager. They were her only source of remuneration and due her when paid to the company.
The defendant in its brief has for the first time raised the defense that no evidence was introduced by the plaintiff as to whether these commissions were actually paid, i.e., whether these binders actually resulted in closings for which commissions were paid. The defendant, therefore, claims that this court is unable to render any judgment in favor of the claimant.
"It is axiomatic that the burden of proving damages is on the party claiming them. When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. "Expressway Associates II v. Friendly Ice Cream Corporation of Connecticut, 218 Conn. 474, 476-7. (Citations omitted.) `Damages are often not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier.' Johnson v. Flammia, [169 Conn. 491, 500.] This situation does not invalidate a damage award as long as `the evidence afforded a basis for a reasonable estimate by the [trier] of that amount.' Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 517." Conaway v. Prestia, 191 Conn. 484,494.
While in Expressway v. Friendly, supra and the various cases cited therein there was no evidence whatsoever to assist the court in fixing the exact amount of pecuniary damages even though the court recognized the plaintiff's right to same, in the instant case the evidence is clear as to the amount due the plaintiff when she ceased work. The question of reasonableness shifts from the exact amount due to whether it is reasonable to assume that in 1988 at the height of the real estate boom these commissions were received by the defendant. CT Page 11311
These binders were all based on contracts to purchase real estate as to which deposits had been lodged with the defendant and, although it is possible that a purchaser would renege on one, it is unlikely and such a remote possibility may reasonably be eliminated in estimating the amount of the commissions received by the defendant.
In the opinion of the court it is not unreasonable to find all the commissions were paid to the defendant and 8% owed to the plaintiff and this court so holds. Thus judgment may enter for the claimant Marilyn Lyren in the amount of $12,068.29.
In this case the plaintiff has made a claim for double damages, interest and attorney's fee under the provisions of the applicable statutes. This is not the usual case of a person working for a weekly wage being refused payment of that wage or the case of one working for less than a minimal wage. This is a case where two persons worked for an employer with the designation of independent contractor. This is a case requiring an interpretation of the statute prior to a determination as to whether or not they had been denied a wage as defined by the statute. Thus in the opinion of the court it is not a case that warrants the application of double damages, interest or attorneys' fees.
Judgment may enter for the plaintiff in the total amount of $24,068.29 for the benefit of Mrs. Gluck and Ms. Lyren, as indicated in this opinion.
Hale, J.