[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Pursuant to General Statutes § 31-249b, the plaintiff, Lick Your Chops, appeals from a decision of the employment security board of review which upheld the granting of unemployment benefits by the defendant administrator of the Unemployment Compensation Act.
Lick Your Chops, an animal boutique that sells clothing, food, and gifts for animals and provides grooming services and bereavement plans and burials, employed the claimant, Marianne Horn, from 1990 to 1996 as a dog groomer in their Branford facility. The plaintiff discharged Horn after an incident occurring on January 27, 1996 regarding the plaintiff taking time off.
After being discharged, the claimant sought and was denied unemployment benefits from the defendant administrator. On February 25, 1996, the claimant appealed from this decision and CT Page 753 applied for a hearing. On March 11, 1996, following a hearing, the employment security division held that the plaintiff, Lick Your Chops, was liable for payment of contributions under the Unemployment Compensation Law from January 1, 1993 to date. The plaintiff appealed from this decision to the appeals referee, claiming that dog groomers are independent contractors and therefore not entitled to unemployment compensation. The referee found for the claimant dog groomer, holding that she was not an independent contractor. The plaintiff employer appealed to the employment security board of review. The board of review found for the claimant and established the following facts regarding the claimant's status as an independent contractor or employee.
The board of review found that the groomers, most of whom were part-time, did not have keys to the premises and scheduled their own working days and hours within the hours that the plaintiffs store was open; but the groomers had to arrange for time off several weeks in advance with the plaintiffs manager. The claimant, however, usually worked Tuesday through Saturday on a 9:00 — 4:00 schedule. The claimant and one of the partners initially set base prices for grooming particular dogs which varied with the dog's condition. Other groomers could set their own fees, but would be called on to explain if fees varied substantially from other groomers. The groomers, who were paid on a weekly basis depending on the number of dogs, kept tips and a fifty-percent commission, and supplied their own clippers, brushes, and small tools. The claimant, however, had only her own clippers. The plaintiff supplied the groomers with the facility, animal cages, tubs, grooming tables, dryers, towels, shampoo, and a washing machine. The plaintiffs manager made the schedule for the groomers; brought the animals to the groomers in back and then back to the clients; took instructions from the clients and relayed them to the groomers; maintained the clients' instructions in a card system; billed the clients as the groomers indicated, and handled all the customer service. The plaintiff, with permission from the groomer, would also offer a substitute groomer to the customer, if the customer's groomer was not available. Further, clients authorized the plaintiff employer to provide any necessary emergency treatment for their pets.
In addition, the plaintiff was licensed as a grooming shop. Neither the plaintiff nor the claimant carried workers' compensation or liability insurance, but on one occasion, when a client's dog bit the claimant, the plaintiff took her to the hospital and paid her medical bills. Also, the groomers were not CT Page 754 required to pay rent for a lease of the grooming space and none of the groomers signed a contract with the employer. Moreover, there was no indication that the claimant ever performed service as a groomer outside of her work at the plaintiffs business.
Further, the plaintiff's manager characterized his interraction with the claimant as disciplinary, and made it clear that he was the "boss" and that the claimant had to do what he told her. He was displeased with the claimant's scheduling time off, completing the grooming later than anticipated, and making a regular customer wait while she groomed a friend's animal. The plaintiff refused to grant some of the claimant's requests for time off and would not give her permission to do free grooming for her friends. The claimant rarely had contact with pet owners and worked for the plaintiff for almost a year before realizing that the plaintiff considered her an independent contractor.
Following the board of review's decision, the plaintiff sent a memorandum to the board of review indicating its desire to appeal the decision. The board of review accepted the petition for an appeal, and pursuant to General Statutes § 31-249b, sent a certified copy of the record to the Superior Court.
 I
This court does not hear this appeal de novo, but may only review the record certified by the board of review. MattatuckMuseum-Mattatuck Historical Society v. Administrator,238 Conn. 273, 276, 679 A.2d 347 (1996). The court does not hear evidence nor retry facts, but instead must determine "whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably have followed from such facts." Id., quoting, United Parcel Service Inc. v.Administrator, 209 Conn. 381, 385, 551 A.2d 724 (1988). The court may not substitute its own conclusions for those of the agency, but it must determine "whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."Mattatuck Museum-Mattatuck Historical Society v. Administrator,
supra, 238 Conn. 276, quoting, United Parcel Service. Inc. v.Administrator, supra, 209 Conn. 386. The court's jurisdiction is particularly limited if, as in this case, a motion to correct the findings is not filed. Petula v. Administrator,33 Conn. Sup. 119, 121, 365 A.2d 635 (1974). In the absence of a motion to correct, the court is bound by the findings of fact adopted by the board of review. The decision, therefore, must stand if it CT Page 755 results from a correct application of the law to the findings of fact and could reasonably follow from those findings. Robinson v.Unemployment Security Board of Review, 181 Conn. 1, 5,434 A.2d 293 (1980).
At issue is whether the provider of services is an employee as a matter of statutory law, not as a matter of common law. General Statutes, § 31-222 (a)(1)(B)(ii) states that a provider of services is considered an employee for purposes of the Unemployment Compensation Act unless the petitioner establishes that the provider of services was free from the recipient's control and direction in connection with the performance of those services, that the services were performed outside the recipient's usual course of business or place of business, and that the provider is customarily engaged in an independently established trade, occupation or business of the same nature as the services provided the recipient. These criteria are collectively known as the "ABC" test. Latimer v. Administrator,216 Conn. 237, 246, 579 A.2d 497 (1990). Moreover, the recipient of services has the burden of proving that all the criteria of the ABC test are satisfied. Id., 246-47. "The test is conjunctive; all parts must be satisfied to exclude an employer from the Act." Id., 247; see General Statutes, § 31-222
(a)(1)(B)(ii).
 II
The first part of the ABC test rests on the right to control. "It is not the fact of actual interference with the control, but the right to interfere, that makes the difference. . . . An employer-employee relationship does not depend on the actual exercise of the right to control. The right to control is sufficient. "Latimer v. Administrator, supra, 216 Conn. 248.
"The determination of the status of an individual as an independent contractor or employee is often difficult . . . and, in the absence of controlling consideration, is a question of fact." Latimer v. Administrator, supra, 216 Conn. 249. Exemptions to the statutory test are strictly construed. Daw's Critical CareRegistry, Inc. v. Department of Labor, 42 Conn. Sup. 376, 389
(1992), 622 A.2d 622, aff'd. 225 Conn. 99, 622 A.2d 518 (1993). An independent contractor is "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." Id., 391-92. CT Page 756
The control test is a balancing test. Tianti v. William RaveisReal Estate, Inc., 231 Conn. 690, 698, 651 A.2d 1286 (1995). Its determination is often not simple. There are many factors, none of which is necessarily conclusive; however, the right to terminate employment without liability is not consistent with independent contractor status. Id. Contract language characterizing an individual as an independent contractor is not controlling. Latimer v. Administrator, supra, 216 Conn. 251-52. Whether an individual holds himself out as an independent contractor can be significant. Chate v. Mobil Shipping andTransportation Co., 32 Conn. App. 16, 20-21, 627 A.2d 956, cert. denied, 227 Conn. 919, 632 A.2d 688 (1993). And when the employer furnishes materials, or equipment, the inference of the right to control in the employer is a matter of common sense and business.Daw's Critical Case Registry, Inc. v. Department of Labor, supra,42 Conn. Sup. 395-96.
The fundamental distinction between an employee and an independent contractor is often determined by the existence or non-existence of the right to control the means and method of work. F.A.S. International v. Reilly, 179 Conn. 507, 512,427 A.2d 392 (1980). The determination of this often difficult question is factual. Latimer v. Administrator, supra216 Conn. 249.
The board of review's findings indicate that the claimant groomer worked at the employer's premises during regularly scheduled hours. The employer's manager kept the only appointment book, made arrangements for the flow of work and scheduled the groomers for appointments — assigning new customers to groomers who were free. He also received instructions from the clients; maintained them in a card system; relayed them to the groomers; and brought the animals to and from the groomers. He also billed customers who paid the employer. Clients authorized the employer to provide necessary treatment to their pets in the event of an emergency. Clearly, the employer provided grooming services to clients as a part of its business. The state licensed the grooming shop, not the groomers, and the groomers did not carry their own liability insurance. Groomers did not have keys to the premises and could not work there before eight A.M. or after eight P.M. which was the time the employer wanted them to work. Groomers did not pay rent for use of the grooming office.
This claimant did not groom pets outside of the employer's CT Page 757 facility, unlike some of the other groomers. In fact, she rarely had contact with pet owners. The claimant worked for the employer for almost one year before she realized that the employer considered her an independent contractor.
On occasion, the employer's manager verbally disciplined the claimant for taking too much time off, for failing to give the employer adequate notice that she was taking time off, or for running behind on her schedule. The employer wanted her there at 8:30 A.M. and was unhappy with her because she usually came at 9:00 A.M. She was also criticized for taking an animal of a friend before the animal of a regular customer. The manager made it clear that he was the "boss" and that she had to do what she was told. The employer refused to grant some of the claimant's requests for time off. She was not given permission to perform free grooming for friends.
While there was some evidence adduced which purported to show that groomers were independent contractors, based on the findings of fact, the court cannot find that the board's decision that the employer did not satisfy the "A" prong of the ABC test was arbitrary, unreasonable or an abuse of discretion. It was a reasonable conclusion based on the facts found that the claimant was an employee under the statute.
 III
Under the "B" prong of the ABC test the employer must prove that the service performed by the claimant is either "performed outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed." Conn. General Statutes, § 31-222 (a)(1)(B)(ii)(II). Our Supreme Court has held that "usual course of business" as used in the "B" prong means that "the enterprise performs the activity on a regular or continuous basis, without regard to the substantiality of the activity in relation to the enterprise's other business activities." Mattatuck Museum-Mattatuck Historical Society v.Administrator, supra, 238 Conn. 281. If it was "usual and customary" for the employer to provide clients with animal grooming, the employment of this groomer was within the usual course of business of the employer. The frequency with which an activity occurs may indicate that it was a normal part of the services offered by the employer. CT Page 758
The findings of fact adopted by the board make it clear that the employer provided grooming services to the general public, that it did so on a daily basis, and that it held itself out to the public as a provider of grooming services. Further, the grooming services were available on the premises of the employer.
Under the circumstances the board was not acting in an arbitrary or illegal fashion, or in abuse of its discretion when it concluded that the employer failed to rebut the presumption of employment under the "B" prong of the ABC test.
 IV
Under the "C" prong of the ABC test the employer is required to prove that the "individual is customarily engaged in an independently established trade, occupation or business of the same nature as that involved in the service performed." Conn. General Statutes § 31-222 (a)(1)(B)(ii)(III). "This requires one or more enterprises created by them which exist separate and apart from their relationships with [the employer] and which will survive the termination of that relationship. " F.A.S.International. Inc. v. Reilly, supra, 179 Conn. 515.
The findings of the board of review indicated that the employer had satisfied the "C" prong regarding some of the groomers who did outside grooming work. Those findings also reveal, however, that the claimant did not fall into this group. She did not groom pets outside of her employment but did all her grooming at the premises of Lick Your Chops. There is nothing in the board's findings that show she engaged in an independently established trade, occupation or business of the same nature as she was involved in with the employer.
Therefore, the court cannot find that the board's decision that the employer failed to rebut the provisions of the "C" prong of the ABC test was unreasonable, illegal or arbitrary. Whatever may be the situation with regard to other groomers, it is the claimant that is the principal in this case. She made the application for unemployment compensation. As to her, the employer has not rebutted the ABC test. "The test is conjunctive; all parts must be satisfied to exclude an employer from the act."Latimer v. Administrator, supra, 216 Conn. 247. "[T]he inability . . . to satisfy any single one of those prongs necessarily results in a conclusion that an employer-employee relationship exists for the purposes of the Unemployment CT Page 759 Compensation Act." Latimer v. Administrator, supra,216 Conn. 252.
It is beyond question that the Act must be liberally construed in favor of those whom it is designed to benefit. MattatuckMuseum-Mattatuck Historical Society v. Administrator, supra,238 Conn. 278. Accordingly, this court finds that the employer has failed to maintain the burden of proving that it has satisfied all three prongs of the ABC test. Therefore, the court finds that the board of review's conclusion was not unreasonable, arbitrary, illegal or an abuse of its discretion.
The appeal is dismissed.
Samuel S. Freedman Judge Trial Referee