[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION — MOTION FOR JUDGMENT
Plaintiff JSF Promotions, Inc. appeals the decision of the Employment Security Board of Review finding the plaintiff liable for unemployment compensation contributions with respect to individuals recruited and assigned by the plaintiff to work as product demonstrators in supermarkets. The decision was based on the board's determination that the demonstrators perform services for the plaintiff which constitute "employment" as that term is defined in Conn. Gen. Stats. sec. 31-222
(a)(1)(B) (ii). The defendant administrator moves for judgment on the board's decision. The plaintiff appeals pursuant to sec. 31-249b. The court finds the issues in favor of the plaintiff.
The facts essential to the court's decision are reflected in the record of this appeal and the findings of fact of the defendant appeals referee, as modified by the defendant board. The court has also reviewed the transcript of the de novo proceeding before the appeals referee, and the referee's findings and conclusions.
The plaintiff corporation operates a business providing individuals to demonstrate products of various manufacturers to consumers, primarily in supermarkets. The plaintiff engages the services of these individuals, who will be referred to as "demonstrators, " pursuant to contracts the plaintiff has with the supermarkets and the demonstrators.
Following an audit by the defendant department of labor for the period January 1, 1993 to December 31, 1995, the auditor determined that the services performed by the demonstrators constituted employment within the meaning of Conn. Gen. Stats. sec. 31-222 (a)(1)(B) (ii) and that the plaintiff as the employer was, therefore, liable for contributions pursuant to the state Unemployment Compensation Act. The auditor's decision was dated July 9, 1996.
The plaintiff appealed the auditor's decision. The appeal was heard by an appeals referee as a de novo proceeding. At the hearing, the plaintiff corporation appeared, represented by counsel, and presented testimony and other evidence through its president. The defendant administrator CT Page 4177 appeared and presented testimony of the auditor. Evidence presented by the parties included copies of the contracts the plaintiff had with the demonstrators and with the supermarkets (see Record of Proceedings BeforeAppeals Referee and Board of Review, filed by the board in this court, December 5, 1997, and transcript of hearing before the appeals referee, pp. 4-5[1]) as well as other evidence. Following the hearing, the referee determined that the services performed by the plaintiff's demonstrators constituted employment for purposes of the Act, essentially agreeing with the auditor's analysis. The referee's decision was dated July 30, 1997.
The plaintiff thereupon appealed the referee's decision to the defendant board of review. In its letter to the board requesting review of the referee's decision, dated August 20, 1997, the plaintiff set forth in detail why it disputed twenty-eight of the referee's findings of fact. The board reviewed the record, including the tape recording of the hearing before the referee and the referee's decision. The board adopted the referee's findings of fact, subject to four modifications that are not significant here. Based on those findings, the board affirmed the referee's conclusions and decision. The board's decision was dated October 30, 1997.
The plaintiff appealed the board's decision to this court on December 1, 1997. On December 5, 1997, the board filed in this court its certified copy of the record before the appeals referee and the board. The appeal then apparently languished for approximately eleven months until October 28, 1998, when the plaintiff filed its first memorandum of law in support of the appeal. The parties then exchanged briefs over a period of many months, a principal focus of which was the extent, if any, that the findings of fact of the referee and the board could be challenged on appeal. On March 23, 2000, the plaintiff filed with the board a motion to correct those findings of fact. The motion was based on the provisions of Practice Book sec. 22-4. Simultaneously, the plaintiff filed a motion with the court for an order requiring the board to prepare and furnish to the court a transcript of the proceedings before the referee. That motion was based on Practice Book sec. 22-1 (c). After consideration, the board denied the motion to correct as untimely. The court granted the motion regarding the transcript.
The defendant administrator filed a motion for judgment on June 21, 2001. A hearing on the motion was held before this court on November 13, 2001. Subsequently, the parties agreed to extend the time for the court's decision to April 13, 2002. Practice Book sec. 11-19.
Appeals of decisions of the board to this court are governed by Conn. Gen. Stats. sec. 31-249b. They are not subject to the provisions of the Connecticut Uniform Administrative Procedure Act. Calnan v.CT Page 4178Administrator, 43 Conn. App. 779, 783 (1996). Pursuant to section 31-249b, an appellant may challenge findings of fact by the board only by motion to correct such findings, filed with the board after the board's decision in accordance with Practice Book sec. 22-4 et seq. Id. The plaintiff's motion to correct in this case was denied by the board as untimely. In one of the plaintiff's briefs to the court, it argues that a timely motion in accordance with the practice book would have been futile inasmuch as the board had already adopted the referee's findings. This argument has little merit. The purpose of the practice book requirement that the motion be filed with the board after the board has made its findings is to allow the board to focus on the particular factual finding or findings that one or more of the parties disputes. There is nothing in this record that indicates that the board, after further reflection, would not have been receptive to correcting its findings if the plaintiff had persuaded it that the evidence so required.
The plaintiff has not formally included in its petition on appeal a claim of error with respect to the denial of its motion to correct in accordance with Practice Book sec. 22-8. Nevertheless, that issue and the issue of the scope of the court's review of the facts have been hotly disputed in briefs to the court and at oral argument on this appeal, and it is appropriate to address them here. The court agrees with the board that the plaintiff made no showing of good cause to excuse the time requirement for filing the motion to correct. Indeed, based on the plaintiff's futility argument, summarized above, and the length of the delay in filing, about seventeen months, it is reasonable to infer that the plaintiff initially chose not to file the motion. The board's denial of the motion is, therefore, affirmed.
In the absence of a motion to correct, the court's review of the factual record is severely limited.
In appeals under General Statutes 31-249b, the Superior Court does not retry the facts or hear evidence but rather sits as an appellate court to review only the record certified and filed by the board of review The court is bound by the findings of subordinate facts and reasonable factual conclusions made by the appeals referee where, as here, the board of review adopted the findings and affirmed the decision of the referee . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the board of review has acted unreasonably, arbitrarily, illegally, or in abuse of its CT Page 4179 discretion. Burnham v. Administrator, 184 Conn. 317, 321-322 (1981).
In this case, as noted, the court is bound by the referee's findings of fact, as adopted with modifications by the board of review. The court's duty, therefore, is to decide whether, in light of the evidence, the board acted unreasonably, illegally, or in abuse of its discretion in adopting and making those findings of fact and concluding, on the basis of those findings, that the services rendered by the demonstrators constituted employment for the plaintiff, affirming the decision of the referee.
In arriving at their decisions, the referee and the board applied the so-called "ABC" test set forth in the statute defining the term "employment" for purposes of the Unemployment Compensation Act; that is, Conn. Gen. Stats. sec. 31-222 (a)(1)(B) (ii). That statute provides, in relevant part, as follows:
 Service performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.
This ABC test is in the conjunctive and all parts must be satisfied before service will be excluded from covered employment. Latimer v.Administrator, 216 Conn. 237, 247 (1990).
Based on her findings of fact, the referee determined that the plaintiff had failed to establish part I, II, or III of the statute. She concluded, therefore, that the services performed by the demonstrators pursuant to their engagement with the plaintiff constituted employment. Accordingly, the referee affirmed the decision of the auditor and dismissed the plaintiff's appeal. As noted, the board modified some of CT Page 4180 the referee's findings, but these changes did not affect its determination that her decision with respect to the ABC test should be affirmed.
 Part A — Control
With respect to part I of the statutory test (the "A" of the ABC), which is the control by the plaintiff over the performance of the demonstrator' work pursuant to contract and in practice, the referee found the following facts: The plaintiff engages the services of the demonstrators primarily through word-of-mouth contact (FF #6). The written contract between the plaintiff and the individual demonstrator provides that the demonstrator is an independent contractor, not an employee (FF #4). The plaintiff does not provide any training to the demonstrators and does not even interview experienced demonstrators before signing with them (FF #9, #19). The plaintiff obtains "fact sheets" concerning the products and coupons from the manufacturers and furnishes them to the demonstrators (FF #12).
The supermarket company advises the plaintiff which stores need demonstrators, and the plaintiff passes the information along to the demonstrators, with information as to the time and place (FF #3, #5, #12, #16, #21). A demonstrator will give the plaintiff a "request to work" form, which also includes information as to the equipment owned by the demonstrator for use on the job, such as microwave, toaster, electric frying pan, cutting board. The plaintiff does not provide such equipment, which is often needed for an assignment. If a demonstrator does not own a microwave, the plaintiff will not ordinarily give him or her an assignment (FF #13, #27). The demonstrators may take supplies they need from the store shelves, and the manufacturer, not the plaintiff, reimburses the store. (FF #14). At the store, a demonstrator's work consists of handing out food samples and coupons to customers (FF #2).
If the supermarket is dissatisfied with a particular demonstrator, it notifies the plaintiff and the plaintiff will not assign that demonstrator to that store in the future (FF #18). The field auditor interviewed three demonstrators (out of a total of seven hundred), who stated that the plaintiff informed them that "there may be spot check" performed by the plaintiff (FF #7, #29, #34).
The rate of compensation to the demonstrators is established by the plaintiff, and the plaintiff pays them on a per diem basis. The plaintiff does not withhold taxes and furnishes an Internal Revenue form 1099 for each demonstrator. (FF #15, #22, #23, #32).
A copy of the contract between the plaintiff and the demonstrators was CT Page 4181 in evidence before the auditor and the referee, and the referee made reference to it in her findings of fact (FF #4). That contract is, therefore, an integral part of the findings of fact, and there is no dispute as to what it provides. The contract provides that the demonstrator "shall perform services as required by (the plaintiff's)clients on the dates and at store locations as periodically specifiedthrough (the plaintiff) on behalf of (its) clients." (Emphasis added.) The contract does not provide for spot checks of the demonstrators' work by the plaintiff Rather, the contract provides "details, manner and means of each demonstration, sampling, inventory count or reset remain under the sole control of the (demonstrator). Designated location, days and estimated times of demonstration . . . remain under the sole control of (plaintiff's) clients and their retailers under separate and private agreement."
The contract provides that the demonstrator is essentially free to determine whether to work a particular job or not. That is to say, a demonstrator is not obligated to report for work upon notification from the plaintiff that a job is available. "[I]t is impossible to gauge the number of days (a demonstrator) will perform services for (the plaintiff's) clients as there will be some weeks during which (the demonstrator) will not perform any services at all or in contrast, there may be periods of time when (a demonstrator) will elect to perform services almost on a daily basis." (Emphasis added.)
The contract further provides "The work and services provided for hereunder shall be performed by (the demonstrator) or may be assigned by (the demonstrator) to other qualified (demonstrators) with notice to (the plaintiff)."
There is virtually nothing in the explicit findings of facts of the referee and the board or in the contract between the plaintiff and the demonstrators, as these are summarized above, that permits the conclusion that the plaintiff exerted or had the fight to exert "control and direction in connection with the performance of such service, both under (the demonstrator's) contract for the performance of service and in fact, "as provided in section 31-222 of the statutes;
The factors cited by the referee simply do not support her conclusion that the plaintiff controlled or had the right to control the demonstrator's work. The fact that the plaintiff "maintained" the Request for Work forms that the demonstrators fill out to indicate their availability may prove that the plaintiff has a good filing system, but it has nothing to do with controlling or directing the work. The place and time of work, the products to be demonstrated, and the fact sheets concerning those products are all determined and supplied either by the CT Page 4182 supermarkets or the manufacturers, not the plaintiff (FF #12). The plaintiff merely transmits this information to the demonstrators (FF #12). The fact (emphasized by the referee in her decision, though not explicitly included in the referee's findings of fact) that the supermarkets exerted no control or direction over the manner of performing the work is not evidence that the plaintiff assumed such a roles especially in view of the plaintiff's contract with the demonstrators, which provides that the demonstrator retains such control.
In their decisions, neither the referee nor the board cited the "spot checks" mentioned by the three demonstrators whom the auditor interviewed as a significant basis of their decisions. In its brief to the court, however, the defendant board argues that the plaintiff retained the right to conduct spot checks of the demonstrators, thus indicating a right to control the manner of performing the work. The court disagrees. There is nothing in the finding of fact regarding spot checks that indicates the purpose of such checks — i.e. to check on whether the demonstrator showed up for work or went to the right store or was demonstrating the right product. Certainly, the finding does not naturally or reasonably lead to the conclusion that the spot check is to assist the plaintiff in controlling or directing the demonstrator in the performance of the work, especially in view of the explicit, contrary provision in the demonstrator's contract. Moreover, the fact that this finding was based on a sampling of less than one-half of one percent of the plaintiff's demonstrators and the fact that no spot checks were ever conducted (essentially conceded by the defendant board in its brief) further erode the significance of this finding on the issue of control.
In its brief, the board argues that the plaintiff's transmission of manufacturers' "fact sheets" to the demonstrators constitutes exercise of control over the performance of their work, citing Latimer v.Administrator, supra, 216 Conn. 250. In Latimer, however, unlike the present case, it was the plaintiff/employer or his attorney-in-fact who established and conveyed to the employees the substance and details of the services to be performed. In this case, it is a third party — either the manufacturer or the supermarket — not the plaintiff, which controls and directs the substance and details of the work to be performed. The plaintiff merely transmits this information to the demonstrators.
The case of Daw's Critical Care Registry, Inc. v. Department of Labor,42 Conn. Sup. 376, 394 (1992) is more to the point on this issue of control than Latimer. As the referee in this case summarized Daw's, the plaintiff in that case "was an agency which provided nurses to various health institutions and hospitals on an as needed basis. The Daws CT Page 4183 maintained a list of nurses. When a client contacted Daws, a nurse would be selected from the list. The nurse could accept or reject the assignment. Daws coordinated the time and place with the medical facility." Decision of the Appeals Referee, p. 5. The Daw's court found that "Daws did not have the general right to control its nurses in the sense that our cases, including Latimer, have perceived that. It had no such control or even the right to control over the means and methods of the nurses' services rendered at their assigned medical facilities. . . . Daws's function . . . was fairly limited to arranging times mutually convenient for the nurse and the particular medical facility where the nurse's services were to be rendered and examining a nurse's pay invoices when submitted to it for payment and in making payment. . . . Again, unlike . . . in Latimer, Daw's did not furnish any materials or tools necessary to do their job. . . . [I]t is essential to keep in mind the rationale underlying that criterion. When it is the employer who (supplies the tools), the inference of right of control in the employer is a matter of common sense and business, otherwise it is not." (Emphasis added). Daw's v. Dept of Labor, supra, 42 Conn. Sup. 394-396.
On the discrete issue of control and direction of the work performed, part A of the ABC test, Daw's v. Department of Labor, supra, provides solid and convincing support for the plaintiff's position in this case. In this case, based on the findings of fact and the undisputed evidence, the only reasonable conclusion, as in Daws, is that the plaintiff served as a mere conduit of information to enable the demonstrator to know what service to provide, what products were to be demonstrated, what equipment the demonstrator had to supply, where and what time the demonstrations were to be performed. Even "quality control" of the demonstrations was out of the plaintiff's hands — in that regard, it took its orders from the supermarket, which would make the judgment whether a particular demonstrator's work was satisfactory or not.
Finally, as noted above, the demonstrator's contract provides "The work and services provided for hereunder shall be performed by (the demonstrator) or may be assigned by (the demonstrator) to other qualified (demonstrators) with notice to (the plaintiff)." This provision plainly means that the plaintiff does not even retain control over who will perform the demonstration service on any given job.
In summary, the court concludes that the referee's finding, adopted by the board as its own, that the plaintiff "exercised control and direction over the demonstrators" is not supported by the referee's findings of fact or any other evidence. Since there is no factual support for the conclusions by the referee and the board as to this issue of control and direction, the court finds that those conclusions on that issue were unreasonable and an abuse of discretion. CT Page 4184
 Part B — Employer's Place of Business
As it pertains to this case, part B of the ABC test in section 31-222
of the statutes requires the plaintiff to establish that the services performed by its demonstrators are "performed outside of all the places of business of the enterprise for which the service is performed." That is to say, the plaintiff must establish that the services are performed outside its own "place of business."
It is undisputed that the demonstrators' services are performed exclusively on the premises of supermarkets, which are entirely separate enterprises from that of the plaintiff. These supermarkets would not, therefore, be commonly understood to be the plaintiff's place of business. Indeed, the referee found as fact that the plaintiff "is located on 10 Melrose Drive, Farmington, Connecticut"[2] (FF #8). The defendant board and referee argue, nevertheless, that the plaintiff fails the part B test on the theory that the plaintiff's business is, as stated in their brief to the court, "providing demonstrations at supermarkets," not merely serving as a broker "providing demonstrators to supermarkets." This theory in turn is based on the defendant's contention that the plaintiff has plenary control over the demonstrators. Since the plaintiff is in the business of performing demonstrations, the defendant argues, its "place of business" is wherever demonstrations are performed; that is, in the supermarkets. The court disagrees.
For the reasons set forth above in the discussion of the issue of control, the court concludes that the plaintiff's business is essentially to serve as a broker or intermediary between the supermarkets, the manufacturers, and the demonstrators. See Daw's Critical Care Registryv. Dept. of Labor, supra, 42 Conn. Sup. 402-404. As such, its place of business is not the supermarkets where the demonstrators work, but rather where the plaintiff does its own work; that is, in its own office. The defendant's conclusion to the contrary is not supported by its findings of fact or the evidence and is, for that reason unreasonable and an abuse of discretion. It follows that the plaintiff has established that all of the services performed by the demonstrators are performed outside the plaintiff's place of business, thereby satisfying part B of the ABC test.
Part C — Demonstrators Engaged in Independently Established Occupation or Business
Section 31-222 requires the plaintiff to establish that the demonstrators are "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." In the context of this case, an CT Page 4185 "independently established trade, occupation, profession or business" is one which exists "separate and apart" from the demonstrators' relationship with the plaintiff and one which would "survive the termination of their relationship with" the plaintiff Daw's Critical CareRegistry v. Dept of Labor, supra, 42 Conn. Sup. 408, 411, citing F.A.S.International, Inc. v. Reilly, 179 Conn. 507 (1980).
In its brief to the court, the defendant argues that the statute requires the plaintiff to establish that "each demonstrator had the characteristics of his own business, such as business cards, his own clients, hiring his own employees, his own place of business, investment of risk capital, performance of services under his own name . . . and a saleable, going business concern." This court in Daw's, however, rejected that construction of the statute. Daw's Critical Care Registry, Inc. v.Dept. of Labor, supra, 42 Conn. Sup. 410-411. In that case, the workers were licensed registered nurses, and the court held that they were, therefore, "in an independently established profession as the result of having been licensed by the state after completing a long course of such instruction and study." 1.4.2 408. The court did not impose any requirement that the nurses have an independent ongoing, saleable business in addition to the work performed under contract with Daw's.
In the present case, the services performed by the demonstrators do not, of course, compare to the services performed by registered nurses in complexity or educational requirements. But the statute does not restrict the exemption to such limited professional services. Rather, "the terms "trade, occupation, profession or business' used in part C comprehensively subsume the spectrum of services capable of being rendered by a person, individual or corporation." Id., 410. Again, the test is not what kind of work is involved or whether the demonstrator is simultaneously engaged in performing the same services for others. The essence of the part C test is whether the business is established independent of the relationship with the plaintiff and would survive the termination of that relationship. In this regard, the contract between the demonstrators and the plaintiff is highly significant. It provides that the demonstrator "is NOT the exclusive agent of [the plaintiff], and [the demonstrator] is free to contract for similar services to be performed for others." (Capitalization in the original). Plainly, an individual under this contract with the plaintiff has established a business that is independent of his or her relationship with the plaintiff. The demonstrator is free to work for a competitor of the plaintiff, or even compete directly, during the same time period he or she is doing similar work under the contract with the plaintiff. Just as obviously, that business would survive the cancellation of the demonstrator's contract with the plaintiff. The determination by the board and the referee that the plaintiff had not satisfied the part C CT Page 4186 test was based on a misinterpretation of the statute relating to this issue. It was, therefore, in error and may not be sustained.
 Conclusion
As indicated above, the court concludes that the plaintiff has satisfied the requirements of Conn. Gen. Stats. sec. 31-222 (a)(1)(B) (ii) and, therefore, the plaintiff's appeal must be sustained and the defendant's motion for judgment must be denied. In the court's view, such a result does no harm to the remedial purposes of the Unemployment Compensation Act. Although the Act "should be construed liberally in favor of beneficiaries in order to effectuate its purpose, it should not be construed unrealistically in order to distort its purpose." F.A.S.International, Inc. v. Reilly, supra, 179 Conn. 515. In this case, it is difficult to imagine under what circumstances a demonstrator under contract with the plaintiff might become a "beneficiary" of the Act; that is, a successful claimant of unemployment benefits. The plaintiff is under no obligation to provide work for pay, the demonstrator is under no obligation to work even if asked. Indeed, it would be perfectly possible for a person to sign the contract and never perform a day's work. Under such circumstances, how would it be determined whether and when an individual under contract is "employed" or "unemployed?"
The court has examined the list of demonstrators who received compensation from the plaintiff during 1995, which was compiled by or for the defendant's auditor in this case. There are about two hundred fifty names. Only one demonstrator received compensation above the poverty level, $10,185. A dozen made less than $50. Most received in the low to mid-four figures. These figures standing alone point to obvious shortfalls in income to the recipients. Nevertheless, as plaintiff's counsel stated in its brief and at oral argument, without contradiction from the defendant Unemployment Compensation Administrator, no demonstrator has ever applied for benefits.
The Act simply does not contemplate coverage for a business relationship such as that between these demonstrators and the plaintiff.
The plaintiff's appeal is sustained. The defendant's motion for judgment is denied.
Maloney. J.