Perry MARGOLES, General Partner, and Milwaukee Immediate Care Systems, a Limited Partnership, Plaintiffs-Appellants,†

v.

STATE of Wisconsin LABOR AND INDUSTRY REVIEW COMMISSION, and State of Wisconsin Department of Industry, Labor, and Human Relations, Defendants-Respondents.

Court of Appeals

No. 97–0333. *Oral argument May 20, 1998.—Decided July 7, 1998.*

(Also reported in 585 N.W.2d 596.)

† Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Perry Margoles* of *Milwaukee Immediate Care Systems*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Jorge L. Fuentes* for the *Department of Workforce Development* and *Labor and Industry Review Commission, Bureau of Legal Affairs*, of Madison.

Before Fine, Schudson and Curley, JJ.

CURLEY, J.   Milwaukee Immediate Care Clinic (MICC),[1] a limited partnership, and Perry Margoles, MICC's general partner, appeal from a circuit court order affirming a Labor and Industry Review Commission (LIRC) order. LIRC found that certain MICC physicians were employees for unemployment tax liability purposes, and reversed a Wisconsin Department

---

[1] MICC is currently doing business as Milwaukee Immediate Care Systems (MICS), and the appellant in this case is technically MICS. To avoid confusion, however, throughout this opinion we will refer to the appellant as MICC.

of Industry, Labor and Human Relations (DILHR) appeal tribunal's order to the contrary. Margoles claims that the circuit court erred because the physicians at issue, for the purposes of § 108.02(12), STATS., 1989–90,[2] were independent contractors. We affirm the circuit court's order.

## I. BACKGROUND.

MICC is a clinic providing medical services in the inner city of Milwaukee. This case originated when DILHR audited MICC to determine MICC's liability to the Unemployment Compensation Reserve Fund for all persons working at the clinic during 1989–1991. During the audit, MICC disputed DILHR's determination that a number of physicians who had worked for MICC from 1989–1991 were employees for the purpose of § 108.02(12), STATS. MICC appealed the department's initial determination to DILHR appeal tribunal, which overruled that determination, finding that MICC had met the two-part test under § 108.02(12)(b)1 and 2, for the physicians to be considered independent contractors. DIHLR appealed to LIRC, and LIRC reversed, finding that MICC had failed to show that the physicians performed their services in an independently established trade, business or profession in which they were customarily engaged. MICC appealed to the circuit court, which affirmed LIRC's decision. MICC now appeals to this court.

---

[2] The text of the current version of § 108.02(12), STATS., is significantly different than that of earlier versions, due to amendments enacted by the legislature in 1995 Wis. Act 118. MICC was audited with respect to physicians working at MICC only during 1989–91; therefore, for the purposes of this appeal, all further references to § 108.02(12) will be to the 1989–90 version of the statute.

## II.  ANALYSIS.

### A.  Standard of Review

In this case, the parties dispute the standard of review. LIRC argues that under *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 548 N.W.2d 57 (1996), its decision is entitled to either great weight or due weight deference. Margoles argues that LIRC's decision should be either accorded due weight deference, or reviewed *de novo*. We conclude that LIRC's decision is entitled to great weight deference.

On appeal, we review LIRC's, rather than the circuit court's, decision. *See Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). Whether a physician is an employee under § 108.02(12), STATS., is a mixed question of fact and law, which requires the application of a statutory standard to findings of fact. *See Larson v. LIRC*, 184 Wis. 2d 378, 386, 516 N.W.2d 456, 459 (Ct. App. 1994). LIRC's factual findings must be upheld on review if there is credible and substantial evidence in the record upon which reasonable persons could rely to make the same findings. Section 102.23(6), STATS.; *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173–74 (1983). Once the facts are established, however, the application of those facts to the statute is a question of law. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

In certain situations, however, we defer to an agency's interpretation or application of a statute. *See UFE*, 201 Wis. 2d at 284, 548 N.W.2d at 61. The supreme court has identified three distinct levels of deference granted to agency decisions: great weight

deference, due weight deference, and no deference; i.e., *de novo* review. *Id.* Under the great weight standard, an agency's interpretation or application of a statute will be upheld if it is reasonable, even if another interpretation or application is more reasonable. *Id.* at 287, 548 N.W.2d at 62. Great weight deference is appropriate only if all four of the following requirements are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the agency's interpretation of the statute is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.* at 284, 548 N.W.2d at 61. Under the due weight standard, an agency's decision will be upheld if it is reasonable, unless another *more* reasonable interpretation exists. *Id.* at 287, 548 N.W.2d at 62–63. Due weight deference is appropriate "when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286, 548 N.W.2d at 62. "The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question." *Id.*[3] Finally, de

---

[3] It is important to emphasize the difference between great weight and due weight deference. Under both standards, an equally reasonable interpretation should not be chosen over the agency's interpretation. Under due weight deference, however, a more reasonable interpretation overcomes an agency's interpretation, while under great weight deference, a more reasonable interpretation will not overcome an agency's interpretation, as long as the agency's interpretation is reasonable.

novo review is appropriate only "when the issue before the agency is clearly one of first impression, or when an agency's position on an issue has been so inconsistent so as to provide no real guidance." *Id.* at 285, 548 N.W.2d at 62 (citations omitted).

■

LIRC argues that great weight deference is appropriate in the instant case because: (1) LIRC is the agency charged by the legislature with administering the unemployment compensation statutes, at least insofar as having final review authority in cases contested at the administrative level; (2) LIRC has interpreted and applied § 108.02(12), STATS., in numerous cases over a lengthy period of time; (3) LIRC used its expertise and specialized knowledge in applying § 108.02(12) to the facts of this case; and (4) upholding LIRC's interpretation will provide uniformity and consistency in the application of § 108.02(12). Margoles, in contrast, argues that great weight deference is inappropriate because *Lifedata Medical Servs. v. LIRC*, 192 Wis. 2d 663, 531 N.W.2d 451 (Ct. App. 1995), a case which LIRC has cited in support of its argument, concerned paramedics instead of doctors. This fact, however, is irrelevant because the test, with respect to the second *UFE* factor, "is not. . .whether the commission has ruled on the precise—or even substantially similar—facts in prior cases." *Barron Elec. Coop. v. Public Serv. Comm'n*, 212 Wis. 2d 752, 764, 569 N.W.2d 726, 732 (Ct. App. 1997).

> Rather, the cases tell us that the key in determining what, if any, deference courts are to pay to an administrative agency's interpretation of a stat-

*UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 287–88 n.3, 548 N.W.2d 57, 63 n.3 (1996).

ute is the agency's experience in administering the particular statutory scheme—and that experience must necessarily derive from consideration of a variety of factual situations and circumstances. Indeed, we have recognized in a series of cases that an agency's experience and expertise need not have been exercised on the precise—or even substantially similar—facts in order for its decisions to be entitled to judicial deference.

*Id.* (footnote omitted). Accordingly, we conclude that LIRC's interpretation and application of § 108.02(12) in the instant case is entitled to great weight deference because: (1) LIRC is the agency charged with administering § 108.02(12), at the administrative review level; (2) LIRC has clearly interpreted and applied § 108.02(12) in numerous cases in order to determine whether particular workers were "employees" within the meaning of that statute; (3) LIRC used its expertise and specialized knowledge in applying the statute in this case; and (4) LIRC's interpretation will provide uniformity and consistency in the application of § 108.02(12). Under this great weight deference standard of review, we must uphold LIRC's decision unless: (1) LIRC's factual findings are not supported by credible and substantial evidence; or (2) LIRC's interpretation and application of § 108.02(12), to those facts is unreasonable.

B. *Whether LIRC's conclusion that the physicians were employees under § 108.02(12), STATS., is reasonable and supported by credible and substantial evidence.*

Section 108.02(12), STATS., states, in relevant part:

**(12)** EMPLOYE. (a) "Employe" means any individual who is or has been performing services for an employing unit, in an employment, whether or not the individual is paid directly by such employing unit; except as provided in par. (b) or (e).

(b) Paragraph (a) shall not apply to an individual performing services for an employing unit if the employing unit satisfies the department as to both the following conditions:

1. That such individual has been and will continue to be free from the employing unit's control or direction over the performance of his services both under his contract and in fact; and

2. That such services have been performed in an independently established trade, business or profession in which the individual is customarily engaged.

(c) This subsection shall be used in determining an employing unit's liability under the contribution provisions of this chapter . . . .

Thus, once the department established that the physicians performed services for MICC, for which they were paid, the burden shifted to MICC to prove that the requirements of § 108.02(12)(b)1 and 2 were met, i.e., that: (1) the physicians performed their services free of MICC's direction and control; and (2) the physicians performed their services in an independently established trade, business or profession in which they were customarily engaged. LIRC agreed with the DILHR appeal tribunal's finding that the physicians performed their services free from MICC's control. LIRC, however, found that MICC had not proven that the physicians performed their services in an independently established trade, business or profession in which they were customarily engaged. Thus, the only dispute on appeal is whether LIRC's latter conclusion

was reasonable and supported by credible and substantial evidence.

In *Keeler v. LIRC*, 154 Wis. 2d 626, 453 N.W.2d 902 (Ct. App. 1990), this court summarized the five factors which courts examine in order to determine whether an individual performed services in an independently established trade, business or profession in which the individual was customarily engaged. These five factors are: (1) integration; (2) advertising or holding out; (3) entrepreneurial risk; (4) economic dependence; and (5) proprietary interest. *Id.* at 633–34, 453 N.W.2d at 905. LIRC found in this case that all five factors weighed against a finding that the physicians performed services in an independently established trade, business or profession in which they were customarily engaged. We conclude that LIRC properly analyzed and weighed the factors, and reasonably concluded that MICC had failed to meet its burden of proof with respect to § 108.02(12)(b)2, STATS.

The first factor, integration, concerns the relatedness of the individual's services to the employer's business. In *Keeler*, we noted that the supreme court, in *Moorman Manufacturing Company v. Industrial Commission*, 241 Wis. 200, 5 N.W.2d 743 (1942), had illustrated this factor

> by using the example of a tinsmith called upon to repair a company's gutters when the company is engaged in a business unrelated to either repair or manufacture of gutters. Because the tinsmith's activities are totally unrelated to the business activity conducted by the company retaining his services, the services performed by the tinsmith do not directly relate to the activities conducted by the company retaining these services and these services

269

were therefore not integrated into the alleged employer's business.

*Keeler*, 154 Wis. 2d at 633, 453 N.W.2d at 905. Unlike the tinsmith example, the medical services which the physicians performed for MICC's patients were directly related to MICC's business of providing medical services to those patients. Therefore, LIRC correctly found that the integration factor weighs in favor of the physicians being categorized as employees for the purpose of § 108.02(12), STATS.

The second factor, advertising or holding out, reflects the fact that "a truly independent contractor will advertise or hold out to the public or at least to a certain class of customers, the existence of its independent business." *Id.* at 633, 453 N.W.2d at 905. LIRC found that

> [t]here was evidence that seven physicians did advertise in the yellow pages. However, six of the seven physicians are simply listed under a street address with a telephone number with no indication of any affiliation with their own or anyone else's practices. One physician does have a listing for an occupational medical clinic but such listing [is] in the 1991–92 yellow pages and that specific physician is in the 1989 audit i.e., his advertising occurs after his affiliation with the appellant. Further, none of the physicians list the appellant's clinic as a number at which they can be contacted. If the physicians were performing services for the appellant as part of their independent business, they would advertise the appellant's number as another location at which they could be contacted. They do not do so. Finally, there are approximately 33 physicians at issue here. Only 7 of the 33 physician's names appear in the yellow pages listings from 1989 through 1992.

270

MICC claims that LIRC's findings "exemplif[y its] ignorance or disregard with respect to professional and economic realities of medical practice." MICC argues that many doctors, for various reasons, choose not to advertise in the yellow pages. MICC, however, fails to point to any evidence showing why the doctors involved in this particular case chose not to advertise. MICC does claim that "many of the doctors practicing at MICC were in residency programs at local hospitals," and that it is uncommon for residents to advertise in the yellow pages. MICC, however, has not presented evidence supporting either claim. In any event, such evidence could just as easily support a conclusion that the residents did *not* have independently-established businesses, but, rather, were both hospital and MICC employees. Therefore, reviewing LIRC's conclusion under the great weight deference standard, we conclude that LIRC reasonably found that the advertising and holding out factor weighs in favor of a finding that the physicians were employees for the purpose of the statute.[4]

---

[4] Throughout its briefs, MICC claims that LIRC "mechanically" applied the five factors by failing to acknowledge the "new economic realities" which "necessitate new business structures and employment relationships" which the "MICC model is about." MICC has also repeatedly urged this court to examine John Bruntz, *The Employee/Independent Contractor Dichotomy: A Rose is Not Always a Rose*, 8 HOFSTRA LAB. L. J. 337 (1991), with respect to its claim that "[t]he tests [for characterizing workers as employees or independent contractors] which evolved from the Industrial Revolution must be evaluated in light of post-Industrial realities." *Id.* at 341. The fact that "economic realities" may have changed, however, neither obviates the need for LIRC and this court to apply the five factor test related to § 108.02(12)(b)2, STATS., nor relieves MICC of its burden to prove that the five factors weigh in its favor. This is an

The third factor, entrepreneurial risk, relates to whether the individual has assumed the financial, or entrepreneurial risks, of the business undertaking. LIRC found "little evidence of entrepreneurial risk in this case." MICC argues that LIRC erred because, although it paid the physicians an hourly rate for their services, payment was based on the receipt of revenues, and substantial amounts either were not paid at all, or were paid up to one year late. LIRC, however, found that "the most the physicians had at risk . . . was the risk of lost wages. The situation of the physicians is no different from that of an employe whose employer faces financial difficulties and is not able to meet payroll." LIRC found that, in contrast to other types of risk, entrepreneurial risk is "a risk that the entrepreneur will be unable to compete successfully in the market place, and as a result will lose capital investment or be unable to cover the cost of inventories, facilities, or other overhead expenses involved in operating the enterprise." LIRC then found that the physicians had no such risk of loss, and noted that Margoles had testified that " 'one of the purposes of this arrangement is to relieve physicians of part of the risk of operating their own practices in the inner city.' " LIRC's findings are supported by credible and substantial evidence. The fact that the physicians risked not being paid for their time due to the clinic's financial problems is not an entrepreneurial risk. Therefore, LIRC reasonably found that this factor weighs in favor of the physicians being employees for the purpose of the statute.

error-correcting court and we are not free to overrule precedent or set policy. *See Cook v. Cook*, 208 Wis. 2d 166, 188, 560 N.W.2d 246, 255 (1997). Many of MICC's arguments are more appropriately addressed to the legislature.

The fourth factor, economic dependence, is relevant because an individual who performs services in an independently established trade, business or profession in which the individual is customarily engaged is usually not economically dependent on one particular employer. LIRC found that "there was a total absence of any evidence from the appellant as to the source and amount of any other compensation received by the individuals at issue here," and held that this factor also weighed against MICC. MICC's brief does not explicitly address this factor. By not presenting sufficient evidence, MICC failed to meet its burden of proof to show that the physicians were not economically dependent on MICC. Therefore, we conclude that LIRC reasonably concluded that this factor weighs against MICC.

Finally, the fifth factor, proprietary interest, "includes the ownership of the various tools, equipment, or machinery necessary in performing the services involved, [and] also includes the more sophisticated concept of proprietary control, such as the ability to sell or give away some part of the business enterprise." *Id.* at 634, 453 N.W.2d at 905. LIRC found that "the appellant was unable to offer evidence of any tangible assets or intangible assets that any of the individual physicians had that they could sell or give away as a going concern." In response, MICC argues that the DILHR appeal tribunal was correct in recognizing that the primary asset of each of the physicians's businesses "was the rendering of medical advice and treatment." Although an individual's particular talents may be considered when analyzing the proprietary interest factor, *see Larson,* 184 Wis. 2d at 394, 516 N.W.2d at 462–63, with respect to the physicians at issue in this case, evidence of tangible assets, such as real estate, office

space, staff, or diagnostic equipment, was still relevant. MICC, however, failed to present any evidence that its physicians had any of these tangible assets indicative of a proprietary interest. Therefore, LIRC reasonably found that this final factor weighs against MICC.

In sum, LIRC reasonably found that MICC failed to show that the physicians at issue met any one of the five factors which LIRC needed to examine in order to determine whether the physicians performed services for MICC in an independently established trade, business or profession in which they were customarily engaged. Therefore, applying the great weight deference standard, we must affirm the circuit court order upholding LIRC's decision.

*By the Court.*—Order affirmed.