******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SOUTHWEST APPRAISAL GROUP, LLC *v.*
ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT
(SC 19651)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 15, 2016—officially released March 21, 2017*

*Michael J. Spagnola*, for the appellant (plaintiff).

*Richard T. Sponzo*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (defendant).

*Opinion*

ROBINSON, J. The sole issue in this appeal is whether part C of the ABC test; see General Statutes § 31-222 (a) (1) (B) (ii);[1] which governs whether an employment relationship exists for purposes of the Unemployment Compensation Act (act), General Statutes § 31-222 et seq., requires proof that the putative employee perform services for third parties other than the putative employer, in order to be deemed an independent contractor. The plaintiff, Southwest Appraisal Group, LLC, appeals[2] from the judgment of the trial court dismissing its appeal from the decision of the Board of Review of the Employment Security Appeals Division (board), which found it liable for unemployment compensation taxes, plus interest, for three of its automobile appraisers following an audit by the defendant, the Administrator of the Unemployment Compensation Act. On appeal, the plaintiff claims that the trial court improperly applied part C of the ABC test, which asks whether "such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed"; General Statutes § 31-222 (a) (1) (B) (ii) (III); in deeming the three appraisers to be employees on the ground that the plaintiff had failed to prove that they had performed appraisal services for anyone other than the plaintiff, despite other evidence indicating that they operated independent businesses. We conclude that evidence of the performance of services for third parties is not required to prove part C of the ABC test but, rather, is a single factor that may be considered under the totality of the circumstances analysis governing that inquiry. Accordingly, we reverse the judgment of the trial court.

The record reveals the following facts and procedural history.[3] The plaintiff is a proprietor-owned automotive damage appraisal business that assesses damaged vehicles, including estimating repair costs and evaluating total losses and salvages. Various insurance companies contract with the plaintiff to inspect insured vehicles for which damage claims have been filed. The plaintiff then subcontracts with various independent appraisers, who perform the damage appraisals on a flat fee basis. Although the appraisers were required to pass a state licensing test, the plaintiff did not pay for any of the appraisers' licensing or testing fees. The plaintiff reported compensation to the appraisers on Internal Revenue Service Form 1099, did not withhold any taxes, and did not provide the appraisers with fringe benefits such as health insurance, vacation time, travel reimbursement, or a retirement plan.

The plaintiff generally left the appraisers to their own devices in accomplishing their tasks. The plaintiff did not supply any of them with vehicles or professional liability insurance. It also did not provide the appraisers

with any training or uniforms. The appraisers had their own home offices and provided their own equipment, such as cameras, telephones, and computers; the plaintiff provided them only a standardized cost estimating software program that its insurance clients required. The appraisers also had printed their own business cards, which noted their contact information, licenses, and independent status. Several of the appraisers had registered business names. All of the appraisers individually bore the risk of making a profit or a loss.

In 2011, the defendant conducted an audit of the plaintiff for tax years 2009 and 2010. Following the audit, the defendant determined that six of the appraisers—Sam Draco, Michael Gerber, Scott Kehoe, Russell Mansfield, Andrew Patrick, and Philip Zembruski—were misclassified as independent contractors rather than as the plaintiff's employees. The defendant further determined that, because of the misclassification, the plaintiff owed $2486.73 in unemployment contribution taxes, plus interest, for calendar years 2009 and 2010. After an evidentiary hearing pursuant to General Statutes § 31-242,[4] an appeals referee (referee) upheld the defendant's decision to assess unemployment taxes, and dismissed the plaintiff's appeal.

The plaintiff appealed from the decision of the referee to the board pursuant to General Statutes § 31-249.[5] In its de novo review of the referee's decision, the board deemed parts A and B of the ABC test satisfied with respect to all six appraisers, concluding that: (1) "the weight of the evidence supports a finding that the appraisers were not subject to the [plaintiff's] direction and control in the performance of their work"; and (2) the plaintiff had proven that the appraisers' work, performed at the homes and offices of the customers of its insurance company clients, was done outside the plaintiff's place of business. The board then turned to part C, which requires proof that "such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ." General Statutes § 31-222 (a) (1) (B) (ii) (III).

On the basis of these facts, the board concluded that the plaintiff had proven part C with respect to Gerber, Mansfield, and Zembruski because they each held themselves out as having an "independently established auto damage appraisal business," whose stability and lasting nature was demonstrated by the receipt of significant compensation from entities other than the plaintiff. The board, however, determined that the plaintiff had not proven part C with respect to Draco, Kehoe, and Patrick. The board acknowledged that Draco, Kehoe, and Patrick had indicia of independent business such as home offices, independent state licensure, and business cards, and that Draco, in particular, had held himself out to the public as an independent appraiser and looked for

additional work from numerous insurance companies and auto body shops by making his availability known by word of mouth. Citing its decision in *Martelle Builders, Inc.* v. *Administrator, Unemployment Compensation Act*, Dept. of Labor, Employment Security Appeals Division, Board of Review Case No. 9010-BR-11 (May 15, 2012), however, the board noted that "[a]lthough Draco made his services available to entities other than the [plaintiff], he testified that he did not in fact perform work for others. Part C of the ABC test requires the [plaintiff] to demonstrate that the individuals are actually engaged in an independently established business. The fact that Draco maintained contractual freedom to engage in appraisal services for other entities does not satisfy [p]art C of the ABC test." The board reached the same conclusion with respect to Kehoe and Patrick, observing that they had not participated in the hearing before the referee, and that James Murphy, the plaintiff's proprietor, "could not demonstrate that either Kehoe or Patrick performed similar services for others." Indeed, the board emphasized that, unlike with Draco, there was no evidence that Kehoe or Patrick had offered their services to others or otherwise held themselves out as independent appraisers, despite the fact that both had registered independent business names. Accordingly, the board rendered a decision sustaining the plaintiff's appeal and reversing the referee's decision in part with respect to Gerber, Mansfield, and Zembruski, but upholding the referee's finding of liability for unemployment contributions with respect to Draco, Kehoe, and Patrick.

The plaintiff subsequently appealed from the decision of the board to the trial court in accordance with General Statutes § 31-249b[6] and Practice Book § 22-1 et seq. Following oral argument, the trial court issued a memorandum of decision agreeing with the board's conclusion that the plaintiff had failed to satisfy part C with respect to Draco, Kehoe, or Patrick. The trial court rejected the plaintiff's claim that the board had improperly determined that proof of part C of the ABC test requires "individuals [to] engage in work for multiple entities simultaneously in order to qualify as independent contractors," and that the board's precedent "merely allows [such work] to be one of many factors for consideration." The trial court concluded that requiring proof that the putative employees actually performed services for other entities is consistent with the economic dependency concerns contemplated by part C, such as whether the end of the relationship with the putative employer will result in the unemployment of the putative employees. Acknowledging that Draco, Kehoe, and Patrick, like the other three appraisers, "maintained their own offices and equipment, were responsible for maintaining their licenses, and had their own business cards," and that Draco had "advertised by word of mouth," the trial court nevertheless held

that the board reasonably gave "considerable weight" to the lack of evidence that they "had provided their services to third parties either during the [audit] period or beyond." The court stated, "[s]imply put, there is no indication on this record that any of these three businesses would survive without their relationship with the plaintiff." Accordingly, the trial court rendered judgment dismissing the plaintiff's appeal. This appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff claims that the trial court improperly upheld the board's construction of § 31-222 (a) (1) (B) (ii), namely, that part C of the ABC test "requires putative independent contractors not only to be customarily engaged in an independently established trade, occupation, profession or business of the same nature as that of service performed, but to be customarily engaged in an independently established *and successful* trade, occupation, profession or business." (Emphasis in original.) Describing this treatment of part C as "radical and wholly unsupported," the plaintiff contends that no deference to the board's decision is required because it is inconsistent with the board's use of a totality of the circumstances approach to part C in prior cases. See, e.g., *Martelle Builders, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, Dept. of Labor, Board of Review Case No. 9010-BR-11; *Mintz* v. *Administrator, Unemployment Compensation Act*, Dept. of Labor, Employment Security Appeals Division, Board of Review Case No. 836-BR-91 (May 8, 1991). The plaintiff emphasizes that this interpretation of part C will have "practical implications . . . damning to Connecticut industry," especially in difficult economic times, by tying the legitimacy of an independent contractor relationship to the putative contractor's business success. Arguing that the trial court improperly relied on our decision in *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, 265 Conn. 413, 420, 828 A.2d 609 (2003), the plaintiff also cites sister state cases such as *Industrial Claim Appeals Office* v. *Softrock Geological Services, Inc.*, 325 P.3d 560 (Colo. 2014), and *In the Matter of the Appeal of Hendrickson's Health Care Service*, 462 N.W.2d 655 (S.D. 1990), and contends that the "focus [instead] should be on the steps taken and efforts made by the putative independent contractor to perform work for others and secure compensation for those services." The plaintiff then argues that, when a proper totality of the circumstances analysis is applied to the facts in the record, it demonstrates that Draco, Patrick, and Kehoe were independent contractors during the audit period.

In response, the defendant contends that we should defer to the board's interpretation of part C because it has previously been subjected to judicial scrutiny by the Superior Court and has been time-tested since the board's 1988 decision in *Feshler* v. *Hartford Dialysis*,

Dept. of Labor, Employment Security Appeals Division, Board of Review Case No. 995-BR-88 (December 27, 1988) (copy contained in the file of this case in the Supreme Court clerk's office). Emphasizing the remedial nature of the act, the defendant argues that we should construe exceptions strictly in favor of workers, whom it is intended to benefit. The defendant then contends that the board's construction of part C as requiring the actual performance of services for other entities at the time of rendering the same services for the putative employer is consistent with the "critical statutory term 'customarily engaged.' " The defendant posits that the board's construction of part C does not "require a successful business but only [the performance of] services for others in an independent business that still remains subject to the risk of profit or loss." The defendant argues that requiring the actual provision of services to third parties other than the putative employer is consistent with the interpretations of part C in *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 265 Conn. 420–21, *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, 42 Conn. Supp. 376, 622 A.2d 622 (1992), aff'd, 225 Conn. 99, 622 A.2d 518 (1993) (per curiam), and *F.A.S. International, Inc.* v. *Reilly*, 179 Conn. 507, 427 A.2d 392 (1980), along with numerous sister state cases. See, e.g., *Carpet Remnant Warehouse, Inc.* v. *Dept. of Labor*, 125 N.J. 567, 592–93, 593 A.2d 1177 (1991); *Margoles* v. *Labor & Industry Review Commission*, 221 Wis. 2d 260, 269–73, 585 N.W.2d 596 (App.), cert. denied, 221 Wis. 2d 654, 588 N.W.2d 631 (1998). Finally, the defendant posits that, even under the plaintiff's construction of part C of the test necessitating a totality of the circumstances analysis, the evidence in the record nevertheless supports the board's decision. We, however, agree with the plaintiff in part, and conclude that a new administrative hearing is required because a putative employee's work for other entities is a relevant, but not dispositive, factor in the totality of the circumstances analysis that governs the relevant inquiry under part C.

"For purposes of the act, 'employment' is defined in part by . . . § 31-222 (a) (1) (B) (ii), which provides in relevant part that '[s]ervice performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III)

such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . .' This statutory provision is commonly referred to as the 'ABC test,' with parts A, B and C corresponding to clauses I, II and III, respectively. . . . This statutory provision is in the conjunctive. Accordingly, unless the party claiming the exception to the rule that service is employment shows that all three prongs of the test have been met, an employment relationship will be found." (Citation omitted.) *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 265 Conn. 418–19.

Whether evidence that the putative employees performed services for third parties other than the putative employer is necessary to prove part C under § 31-222 (a) (1) (B) (ii) (III) presents an issue of statutory interpretation subject to plenary review in accordance with General Statutes § 1-2z. See, e.g., *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, 320 Conn. 611, 642, 134 A.3d 581 (2016). In interpreting statutory language we "do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014). Moreover, it is well settled that we accord "great weight" and deference to previous agency interpretations of a statute when they are "time-tested" and "reasonable." (Internal quotation marks omitted.) *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 642–43.

"[W]hen interpreting provisions of the act, we take as our starting point the fact that the act is remedial and, consequently, should be liberally construed in favor of its beneficiaries. . . . Indeed, the legislature underscored its intent by expressly mandating that the act shall be construed, interpreted and administered in such manner as to presume coverage, eligibility and nondisqualification in doubtful cases. . . . We also note that exemptions to statutes are to be strictly construed. . . . Nevertheless, the act should not be construed unrealistically in order to distort its purpose. . . . While it may be difficult for a situation to exist where an employer sustains his burden of proof under the ABC test . . . it is important to consider that [t]he exemption [under the act] becomes meaningless if it does not exempt anything from the statutory provisions . . . where the law and the facts merit the exemption in a given case. . . . Rather, statutes are to be construed so that they carry out the intent of the legislature. . . . We must construe the act as we find it . . . ." (Citations omitted; internal quotation marks omitted.) Id., 616–17; see also General Statutes § 31-274 (c). In applying the ABC test, we must balance preventing the

use of sham independent contractor agreements to avoid unemployment insurance obligations against "hamper[ing] those who undertake to do business together as independent contracting parties, rather than as employer and employee," on a legitimate basis. (Internal quotation marks omitted.) *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, supra, 42 Conn. Supp. 404.

In the present case, it is undisputed that the plaintiff has satisfied parts A and B of the ABC test. Accordingly, we turn to part C, which considers whether the putative employee "is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ." General Statutes § 31-222 (a) (1) (B) (ii) (III). The "adverb 'independently' modifies the word 'established' and in that context, fairly construed, means that the trade, occupation, profession or business was established independently of the 'employer' . . . . Moreover, such 'independently established activity' must be one in which the 'employee' is 'customarily engaged.' 'Customarily' has been said to mean 'usually, habitually, regularly.' . . . The use of 'is,' the present tense, shows that the 'employee' must be engaged in such independently established activity at the time of rendering the service which is the subject of inquiry. An established business has been said to be one that is 'permanent, fixed, stable, or lasting.' " (Citations omitted.) *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, supra, 42 Conn. Supp. 407. The "performance of like services . . . must be independent of whatever connection [the putative employees] have with [the putative employer] and their continued performance of such like services must not be subject to their relationship with the principal." *F.A.S. International, Inc.* v. *Reilly*, supra, 179 Conn. 515. The question is whether "one or more enterprises created by [the putative employees] which exist separate and apart from their relationships with [the putative employer] and which will survive the termination of that relationship." Id. Put differently, part C "seeks to discern whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise."[7] (Internal quotation marks omitted.) *Athol Daily News* v. *Board of Review of the Division of Employment & Training*, 439 Mass. 171, 181, 786 N.E.2d 365 (2003).

In considering the type of evidence necessary to prove part C, we begin with *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 265 Conn. 413, on which both parties heavily rely. In *JSF Promotions, Inc.*, we considered whether product demonstrators who distributed samples and coupons to customers in stores, were employees of the company, JSF Promotions, Inc. (JSF), which contracted with the stores to provide those product demonstration

services, despite the fact that the demonstrators worked under an " '[i]ndependent [c]ontractor [a]greement.' " Id., 416. Noting the lack of evidence of independent enterprise, such as business cards, we upheld the board's determination that the product demonstrators did not satisfy part C. Id., 416–17. Citing sister state cases, including *In the Matter of the Appeal of Hendrickson's Health Care Service*, supra, 462 N.W.2d 657–59, we concluded that "the existence of a contractual provision permitting the demonstrators in the present case to perform demonstration services for entities other than JSF does not necessarily mean that they have established businesses independent of their relationship with JSF. If the legislature had intended to exclude from the statutory definition of employment those workers who, in addition to satisfying the first two prongs of the test, are free to engage in an independently established trade, occupation, profession or business, but who have not done so customarily, it easily could have so provided. Accordingly, we conclude that the third prong is not satisfied *merely* because the individuals are free to establish businesses or to work for other entities." (Emphasis altered.) *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 420; see id., 420–21 ("[t]he fact that, under their contract with JSF, the demonstrators were permitted to engage in an independently established trade, occupation, profession or business does not demonstrate that they were not at the economic risk of unemployment by the conduct of JSF" [internal quotation marks omitted]).

In our view, the defendant and the trial court read too narrowly our statements in *JSF Promotions, Inc.*, that part C "is not satisfied merely because the individuals are free to establish businesses or to work for other entities," and that "an individual who *is permitted* under a contract for services to establish a business or perform additional services for third parties *does not necessarily do so*"; (emphasis altered) id., 420; as standing for the proposition that an individual must actually perform services for third-party entities in order to be considered an independent contractor. Our observation in *JSF Promotions, Inc.*, that there was no evidence that the product demonstrators had engaged in services for other companies must be read in the context of the record in that case, in which there was no "documentation that the demonstrators were in business for themselves," such as business cards. (Internal quotation marks omitted.) Id., 416. Without any other evidence of an independent business, only proof that the product demonstrators had also performed their services for third parties while working for JSF would have supported the employer's position that they were in fact independent contractors. Particularly when read in light of this court's other cases considering part C,[8] *JSF Promotions, Inc.*, suggests that the performance of services

for third parties is relevant evidence with respect to part C, but must be viewed in the context of the entire record.[9]

Both our cases and the board's decisions applying part C of the ABC test counsel, then, that part C must be considered in relation to the totality of the circumstances, with that inquiry guided by a multifactor test.[10] See, e.g., *King's Speech & Learning Center* v. *Administrator, Unemployment Compensation Act*, Dept. of Labor, Employment Security Appeals Division, Board of Review Case No. 9000-BR-15 (June 2, 2015); *Martelle Builders, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, Dept. of Labor, Board of Review Case No. 9010-BR-11. This "totality of the circumstances test . . . evaluates the dynamics of the relationship between the putative employee and the employer; there is no dispositive single factor or set of factors." *Industrial Claim Appeals Office* v. *Softrock Geological Services, Inc.*, supra, 325 P.3d 565. Factors to consider in evaluating the totality of the circumstances under part C include: (1) the existence of state licensure or specialized skills; (2) whether the putative employee holds himself or herself out as an independent business through the existence of business cards, printed invoices, or advertising; (3) the existence of a place of business separate from that of the putative employer; (4) the putative employee's capital investment in the independent business, such as vehicles and equipment; (5) whether the putative employee manages risk by handling his or her own liability insurance; (6) whether services are performed under the individual's own name as opposed to the putative employer; (7) whether the putative employee employs or subcontracts others; (8) whether the putative employee has a saleable business or going concern with the existence of an established clientele; (9) whether the individual performs services for more than one entity; and (10) whether the performance of services affects the goodwill of the putative employee rather than the employer. See id., 564–65; see also *Margoles* v. *Labor & Industry Review Commission*, supra, 221 Wis. 2d 269 (applying five factor test to part C inquiry, namely: "[1] integration; [2] advertising or holding out; [3] entrepreneurial risk; [4] economic dependence; and [5] proprietary interest").

Thus, just as the mere freedom to provide services for third parties is not by itself dispositive under part C; *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 265 Conn. 420; "whether the individual actually provided services for someone other than the employer is [not] dispositive proof of an employer-employee relationship." *Industrial Claim Appeals Office* v. *Softrock Geological Services, Inc.*, supra, 325 P.3d 565. Context matters— consistent with *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 420, and *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor,*

supra, 42 Conn. Supp. 408–409—and our sister state cases demonstrate that the degree to which a putative employee provides similar services for third parties cannot be considered in isolation from, or given primacy over, the other factors. For example, in *Softrock Geological Services, Inc.*, the Colorado Supreme Court held that the administrative agency had improperly applied part C in determining that a geologist was an employee because he worked only for a single company during the audit period, in light of evidence that the company "did not provide [the geologist] with training or tools during this time; rather, [the geologist] was expected to, and did, use his own vehicle, tools, and equipment (except for certain specialized equipment that he rented from [the company]) to complete the jobs. [The geologist] also had his own business cards, maintained his own liability insurance, and did not represent himself as a [company] employee."[11] *Industrial Claim Appeals Office* v. *Softrock Geological Services, Inc.*, supra, 562. Similarly, the Vermont Supreme Court has concluded that a seamstress satisfied part C because, in addition to having "knitted for other companies and individuals in the past," she "owned her own equipment," meaning that her nearly forty hour per week workload for the company at issue did not require a finding of employment insofar as some people need to work multiple jobs "full-time . . . simply to make ends meet." (Internal quotation marks omitted.) *Fleece on Earth* v. *Dept. of Employment & Training*, 181 Vt. 458, 467–68, 923 A.2d 594 (2007). In contrast, *In the Matter of the Appeal of Hendrickson's Health Care Service*, supra, 462 N.W.2d 659, the South Dakota Supreme Court held that health-care providers did not satisfy part C, when in addition to not having "any clientele independent of that provided by" the referral service, they also "did not advertise their health care services . . . did not have business premises or business cards," and were subject to dismissal for "violating the provisions of the 'Subcontractor's Responsibilities' document," indicating that they were "employed by [the referral service] and dependent upon it for their livelihood." These cases demonstrate that evidence of the provision of services to third parties, or lack thereof, becomes more significant in proving independent contractor status in the context of cases lacking other indicia of a putative employee's independent enterprise.[12]

We emphasize that particular caution is necessary in considering the relative size or success of the putative employee's otherwise independent business in connection with the totality of the circumstances analysis under part C. Giving improper primacy to this factor risks "subjecting an employer unfairly to the decisions of the putative employee and an unpredictable hindsight review," without consideration of "the intent of the parties, the number of weekly hours the putative employee actually worked for the employer, or whether

the putative employee even sought other work in the field."[13] *Industrial Claim Appeals Office* v. *Softrock Geological Services, Inc.*, supra, 325 P.3d 565; see *Athol Daily News* v. *Board of Review of the Division of Employment & Training*, supra, 439 Mass. 182 ("[t]he breadth of each carrier's delivery service is a function, not only of the original subscriber list given to the carrier by the [newspaper], but of the individual initiative of the carrier"). It also, as the plaintiff points out, would have a chilling effect on businesses' willingness to contract with otherwise legitimate small businesses with minimal client bases and revenues, such as those run as start-ups or by persons who are transitioning to retirement.[14] The defendant's reliance on the "underlying remedial purpose of the act as a whole" notwithstanding, we should not "interfere with the legislature's intent of exempting employers from their obligation to pay unemployment taxes when they hire independent contractors to perform work for the enterprise. In other words, because all portions of a statute are not intended to have a remedial effect, the application of the remedial canon of statutory interpretation should be restrained in order to effectuate the legislative compromise" embodied by the ABC test. *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 320 Conn. 658.

Turning to the record in the present case, we conclude that the trial court improperly upheld the board's decision that the plaintiff did not satisfy part C of the ABC test. The board's decision was based on a misapprehension of the governing legal standard insofar as it accorded dispositive weight to the lack of evidence that Draco, Kehoe, and Patrick performed services for third parties, despite the ample evidence suggesting that they had independent business enterprises. Accordingly, we conclude that remand to the board is required for fact-finding in accordance with the proper legal standard.[15] See *Almada* v. *Administrator, Unemployment Compensation Act*, 137 Conn. 380, 392–93, 77 A.2d 765 (1951) (remanding case to administrative agency for new hearing and finding of facts in accordance with court's articulated definition of lockout); *Fabrizi* v. *Administrator, Unemployment Compensation Act*, 12 Conn. App. 207, 209–12, 530 A.2d 203 (1987) (trial court should have remanded case to agency to determine factually whether employee quit voluntarily and without cause, rather than directing judgment); accord *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 606 and n.16, 996 A.2d 729 (2010) (remand to labor agency required for application of proper statutory standard defining "managerial employees"); see also General Statutes § 31-249b; Practice Book § 22-9 (a).

The judgment is reversed and the case is remanded to the trial court with direction to sustain the plaintiff's appeal and to remand the matter to the Board of Review

of the Employment Security Appeals Division for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

[1] The ABC test is set forth in General Statutes § 31-222 (a) (1) (B) (ii), which defines the term "employment" to include, in part, services performed by "any individual who, under either common law rules applicable in determining the employer-employee relationship or under the provisions of this subsection, has the status of an employee. Service performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ." See also *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, 265 Conn. 413, 418, 828 A.2d 609 (2003) ("[t]his statutory provision is commonly referred to as the 'ABC test,' with parts A, B and C corresponding to clauses I, II and III, respectively").

We note that, although General Statutes § 31-222 has been amended by the legislature since the events underlying the present appeal; see, e.g., Public Acts 2013, No. 13-168, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] We draw our recitation of the facts from those found by the board in its original decision and its subsequent decision on the plaintiff's motion to correct its findings. The plaintiff does not contest the accuracy of these findings.

[4] We note that, although General Statutes § 31-242 has been amended by the legislature since the events underlying the present appeal; see Public Acts 2016, No. 16-169, § 7; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[5] We note that, although General Statutes § 31-249 has been amended by the legislature since the events underlying the present appeal; see Public Acts 2016, No. 16-169, § 11; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[6] We note that, although General Statutes § 31-249b has been amended by the legislature since the events underlying the present appeal; see Public Acts 2016, No. 16-169, § 13; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[7] Part C has been described as the ABC test's "prong most likely to narrow legitimate independent contracting." A. Deknatel & L. Hoff-Downing, "ABC on the Books and in the Courts: An Analysis of Recent Independent Contractor and Misclassification Statutes," 18 U. Pa. J.L. & Soc. Change 53, 70 (2015); see also *Lake Preston Housing Corp.* v. *Dept. of Labor*, 587 N.W.2d 736, 739 (S.D. 1999) (observing that "independent economic enterprise" demonstrates putative employee's willingness to assume "the risk of his or her own unemployment").

[8] Our conclusion in *JSF Promotions, Inc.*, was wholly consistent with the factual records considered in this court's previous part C jurisprudence. See *F.A.S. International, Inc.* v. *Reilly*, supra, 179 Conn. 514–15 and n.6 (holding that art school satisfied part C with proof that artists, writers, and photographers who reviewed work of its students practiced their artistic professions elsewhere independently of school, in contrast to delivery person in *Rozran* v. *Durkin*, 381 Ill. 97, 105, 45 N.E.2d 180 [1942], with essentially full-time schedule, with no discussion of financial viability of artists' careers beyond their adjunct work for school or other indicia of independent businesses); *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, supra, 42 Conn. Supp. 410–11 (holding part C satisfied with respect to licensed nurses

who received assignments from referral service, and relying on their performance of assignments for other medical facilities while working for plaintiff, to reject argument that nurses needed "a saleable business before they could be considered customarily engaged in an independently established profession" [internal quotation marks omitted]).

[9] Contrary to the defendant's arguments, the Superior Court cases relied upon by the trial court similarly do not support the position that the performance of services for third parties is necessary to prove part C. Apart from demonstrating substantially more control by the employer over the actions of the putative employee with respect to part A of the ABC test, the part C evidence in these cases had minimal indicia of independent business in addition to the lack of evidence of work for third parties. See, e.g., *Labor & Logistics Management* v. *Administrator, Unemployment Compensation Act*, Superior Court, judicial district of Hartford, Docket No. CV-09-4042142-S (October 3, 2012) (54 Conn. L. Rptr. 822, 825) (concluding that truck drivers' skills and state licensure did not make them independent contractors when they did not have their "own tractors or trucks, advertised their services to the public," or have their own " 'established clientele or place of business,' " which rendered them distinct from nurses in *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, supra, 42 Conn. Supp. 376, who worked for other agencies in addition to having state professional licensure).

[10] The appendices to the parties' briefs supply us with a comprehensive assortment of the board's decisions in this area. Given their fact sensitivity, we disagree, however, with the defendant's argument that they demonstrate that the board has a time-tested interpretation requiring performance of the same kinds of services for other entities in order to satisfy part C. See *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 320 Conn. 646 (The court rejected the claim that the board has a "long-standing agency interpretation" of part B "to assist in determining when services are performed outside the places of business of the enterprise. Rather, the board has reached different conclusions based on the facts and circumstances of individual cases."). Specifically, with the exception of the earliest cited case, *Feshler* v. *Hartford Dialysis*, supra, Dept. of Labor, Board of Review Case No. 995-BR-88, all of the cited decisions, particularly those subsequent to *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 265 Conn. 413, demonstrate adherence to a nuanced multifactor test, with work for third parties being but one factor in these decisions, all of which are factually distinguishable from this case given the lack of proof therein with respect to the other factors, such as advertising or capital investment. See, e.g., *King's Speech & Learning Center* v. *Administrator, Unemployment Compensation Act*, Dept. of Labor, Employment Security Appeals Division, Board of Review Case No. 9000-BR-15 (June 2, 2015) (part C satisfied by therapist who had her own business and provided services for clients independently, but not satisfied by other therapists who " 'moonlight[ed]' " for third parties when there was no evidence with respect to nature of their independent businesses beyond single listing on Internet website); *Martelle Builders, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, Dept. of Labor, Board of Review Case No. 9010-BR-11 (part C not satisfied when carpenters had own tools, but there was no evidence of independent business such as letterhead, invoices, or business cards and home improvement contractor expected them to leave job site clean "presumably because failing to do so could affect [its goodwill]"); *Wright* v. *Seniors Helping Seniors*, Dept. of Labor, Employment Security Appeals Division, Board of Review Case No. 9003-BR-10 (May 25, 2010) (part C not satisfied by home care aide who received workers' compensation and liability insurance coverage from agency, had no licensing, no business cards, tools or advertising, and was paid on hourly basis); *Chamberland* v. *Labor & Logistics Management*, Dept. of Labor, Employment Security Appeals Division, Board of Review Case No. 9004-BR-08 (December 16, 2008) (part C not satisfied by commercial truck driver who did not own truck or carry liability insurance, or advertise his services or carry business cards); *Mintz* v. *Administrator, Unemployment Compensation Act*, supra, Dept. of Labor, Board of Review Case No. 836-BR-91 (part C satisfied when unemployment claimant held herself out as independent business for tax purposes, and had stationary and business cards, with no discussion of degree of work for third parties); see also *Feshler* v. *Hartford Dialysis*, supra, Dept. of Labor, Board of Review Case No. 995-BR-88 (part C not satisfied with respect to dialysis nurses, who were trained by hospital and devoted full working time to it, with no evidence that they worked for other facilities, other than single nurse's two

week stint at children's summer camp).

Moreover, as in *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 320 Conn. 655–56, we also find instructive the defendant's own reference materials provided to employers, namely, the state of Connecticut's publication entitled "Self-Assessment of the Employer-Employee Relationship for CT Unemployment Taxes," available at https://www.ctdol.state.ct.us/uitax/abctest.doc (last visited March 8, 2017). The section pertaining to part C of the test indicates that whether the putative employee works for more than one entity is but one factor, insofar as it focuses primarily on the independent nature of the putative employee's business, such as: (1) letterhead; (2) other client references; (3) advertisements; (4) sales tax registration and collection; (5) holding business liability insurance; (6) business cards; (7) bills or invoices with a printed logo or trade name; and (8) federal business identification number. Id., p. 5. The economic success of the enterprise is not mentioned at all, and whether the putative employee works for more than one entity is but one of eight factors also listed in part A that "may help to determine the existence of a business" under part C. Id., pp. 2–5. This document suggests that the defendant does not consider an otherwise independent business' economic success or multiplicity of clients to be a singularly dispositive factor under part C.

[11] We acknowledge the defendant's reliance on *Auto Damage Appraisers, Inc.* v. *Industrial Commission*, 666 P.2d 1113, 1114 (Colo. App. 1983), in support of the proposition that automobile damage appraisers working for an appraisal agency did not satisfy part C. Particularly given the multifactor test articulated much more recently by the Colorado Supreme Court in *Industrial Claim Appeals Office* v. *Softrock Geological Services, Inc.*, supra, 325 P.3d 564–65, we believe that the Colorado intermediate appellate court's decision in *Auto Damage Appraisers, Inc.*, lacks persuasive value because it contains no factual details about the nature of the relationship at issue in that case.

[12] We note that other sister state cases provide illustrative examples. Compare *Vector Marketing Corp.* v. *Maine Unemployment Ins. Commission*, 610 A.2d 272, 273–75 (Me. 1992) (cutlery sales managers and representatives lacked proprietary interest necessary to satisfy part C when there was no evidence they held themselves out as "an independent businessperson," identified very closely with cutlery company through business cards, office signage, and business checks, had noncompete provisions in their contracts, and sold no products other than company's), and *Margoles* v. *Labor & Industry Review Commission*, supra, 221 Wis. 2d 270–73 (upholding administrative agency finding under part C that physicians were employees of clinic given no evidence of compensation from other sources, in combination with unexplained minimal or nonexistent advertising in telephone book, no entrepreneurial risk beyond not being paid by clinic, no evidence of ownership of equipment or other tangible assets), with *Athol Daily News* v. *Board of Review of the Division of Employment & Training*, supra, 439 Mass. 181–82 (holding that newspaper carriers satisfied part C because they used their own vehicles, were free to deliver for other newspapers or companies, purchased newspapers wholesale and resold them to subscribers, with lack of advertising not dispositive because carriers were free to advertise if they desired "in an attempt to increase the number of subscribers on their routes or to acquire similar relationships with other publishing companies").

[13] Thus, we disagree with the decision of the New Jersey Supreme Court, relied upon by the defendant, in *Carpet Remnant Warehouse, Inc.* v. *Dept. of Labor*, supra, 125 N.J. 567. In that case, the court articulated a multifactor test in remanding the case to the administrative agency to determine whether carpet installers could satisfy part C, and directed the agency to "consider the amount of remuneration each installer received from [the putative employer] compared to that received from other retailers. Those who received a small proportion of compensation from [the putative employer] are more likely to be able to withstand losing [its] business." Id., 593.

We similarly disagree with the decision of the Arkansas Court of Appeals in *Stepherson* v. *Director, Employment Security Dept.*, 49 Ark. App. 52, 895 S.W.2d 950 (1995), on which the defendant also relies. In *Stepherson*, the court concluded that part C was not satisfied solely on the basis of the fact that the truck drivers drove full-time for the single company at issue, with no consideration or discussion of other indicia of an independent business. Id., 55.

[14] Moreover, as the Massachusetts Supreme Judicial Court has pointed out, an overly "literal application" of part C requiring proof that the putative

employee performs work for other parties "would deny independent contractor status to almost any worker whose trade, occupation, profession or business, although established and operated independently, remains economically viable solely because of its contractual relationships with other entities, and would render superfluous any examination of criteria set forth in part (a) (freedom from control over performance of services) or part (b) (performance of services outside the usual course or places of business) of the ABC test." *Athol Daily News* v. *Board of Review of the Division of Employment & Training*, supra, 439 Mass. 180.

[15] In both its brief and during oral argument before this court, the plaintiff requested that we, in essence, grant appellate relief that would direct the board to render judgment in its favor on the basis of the undisputed facts contained within the record. Given the fact sensitive nature of the part C determination, it appears that more than one reasonable conclusion may be derived from the facts of this case with respect to Draco, Kehoe, and Patrick, particularly given the lack of evidence in the record with respect to business development efforts undertaken by Kehoe and Patrick as compared to Draco. See *Toll Bros.*, *Inc.* v. *Inland Wetlands Commission*, 101 Conn. App. 597, 602–603, 922 A.2d 268 (2007) (remand to agency for further proceedings is appropriate remedy when court "not convinced as a matter of law" when there is more than one "conclusion that [it] reasonably could reach"). Accordingly, remand to the board for further proceedings in accordance with our explanation of part C is necessary in order to avoid invading the board's fact-finding province under the act; should the board deem an additional remand to the referee appropriate or necessary, it remains free to order that remedy. See General Statutes § 31-249.

———————————————